747 F.2d 678
 55 A.F.T.R.2d 85-397, 84-2 USTC P 9979
 UNITED STATES of America, Frank A. McCammon, Special Agent,
Internal Revenue Service, Plaintiffs-Appellees,
v.
CENTENNIAL BUILDERS, INC., Charles H. Erwin, et al., Defendants,
Charles H. Erwin, Fred D. Jones, Jones-Erwin Industries,
Inc., and O.H.M., Inc., Intervenors-Appellants.
 No. 83-7524.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 28, 1984.
 
 John M. Bray, David J. Curtin (argued), Washington, D.C., for Fred D. jones.
 Frederick G. Helmsing, Mobile, Ala., for Charles H. Erwin, Jones-Erwin Ind., Inc. and O.H.M., Inc.
 Ginny S. Granade, Asst. U.S. Atty., Mobile, Ala., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief Appellate Section, Charles E. Brookhart, John A. Dudeck, Jr. (argued), Tax Div., Dept. of Justice, Washington, D.C., for plaintiffs-appellees.
 Appeals from the United States District Court for the Southern District of Alabama.
 Before TJOFLAT, HILL and JOHNSON, Circuit Judges.
 JAMES C. HILL, Circuit Judge:
 
 
 1
 Appellant-Taxpayers appeal from a district court order enforcing eight Internal Revenue Service administrative summonses. We affirm the order, finding no improper purpose on the part of the IRS nor any constitutional infirmities that would prevent enforcement.
 
 I. BACKGROUND
 
 2
 Special Agent Frank McCammon of the Criminal Investigation Division of the IRS was assigned to conduct a tax investigation of appellants Fred D. Jones, Charles H. Erwin, Jones-Erwin Industries, Inc., and O.H.M., Inc. This undercover investigation was conducted as part of the IRS's "Business Opportunity Project," in which IRS agents posing as prospective purchasers of businesses contacted owners of businesses suspected of concealing income from the IRS in the hope that owners would disclose their illegal activities in an effort to enhance the saleability of the businesses. In early 1981, McCammon visited appellant Jones at his retail cleaning business, identifying himself as a private businessman and stating that he was interested in buying the cleaning business. During this meeting, the agent asked Jones for various information about his business. When Jones specifically asked McCammon whether he was an IRS investigator, McCammon denied that he was and continued questioning Jones.
 
 
 3
 Thereafter, in March, 1982, McCammon issued administrative summones to four banks, two corporations, and two accountants, requesting various books and records relating to the taxpayers' tax liability for the period in question. Taxpayers directed the respondents not to comply with the summonses (pursuant to Sec. 7609(b) of the Internal Revenue Code); and on November 18, 1982, the United States instituted these proceedings to enforce the summonses in the District Court. The district court held an enforcement hearing on August 31, 1983, and issued an order enforcing all eight summonses on September 9, 1983. This appeal followed.
 
 II. DISCUSSION
 
 4
 Section 7602 of the 1954 Internal Revenue Code authorizes the Secretary of Treasury to issue summonses for various purposes relating to the calculation of a taxpayer's tax liability. If the person to whom the summons is issued fails to comply, the United States must seek judicial enforcement under Secs. 7402 and 7604.
 
 
 5
 To obtain enforcement of a summons, the government must make a preliminary showing that the summons is issued for a legitimate purpose, that the information sought is relevant to that purpose and not already within the Commissioner's possession, and that the appropriate administrative steps have been followed. United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-255, 13 L.Ed.2d 112 (1964). Once the government makes this preliminary showing, the burden shifts to the taxpayer "to disprove one of the four Powell criteria, or to demonstrate that judicial enforcement should be denied on the ground that it would be an 'abuse of the court's process.' " United States v. Beacon Federal Savings & Loan, 718 F.2d 49, 52 (2d Cir.1983); see United States v. Powell, 379 U.S. at 58, 85 S.Ct. at 255.
 
 
 6
 Appellants do not dispute that the government made a sufficient prima facie showing of the Powell factors; but they argue that the district court erred in enforcing the summonses in that the summonses were issued for an improper purpose and as a result of alleged constitutional violations.
 
 A. Purpose of Issuance of Summonses
 
 7
 The summonses in this case were issued in March, 1982, and these enforcement proceedings commenced on November 18, 1982. In the intervening time, a TEFRA (Tax Equity and Fiscal Responsibility Act of 1982) amendment to section 7602 became effective, which somewhat expanded the IRS's power to issue summonses by permitting summonses to be issued solely for a criminal tax purpose as long as the IRS has not referred the tax case to the Department of Justice for criminal prosecution. I.R.C. Sec. 7602. Prior to this amendment, the IRS could not use its summons power for a solely criminal purpose. The district court ruled that the TEFRA amendments to Sec. 7602 applied to the summonses issued in this case, and thus held that the summonses were properly issued because there had been no Justice Department referral. Appellants contend that the summonses should have been judged under the standards of the pre-TEFRA Sec. 7602, and that they should thus be given a chance to prove that the summonses were improperly issued for solely criminal purposes.
 
 
 8
 We assume without deciding that these summonses, issued before the TEFRA amendment to Sec. 7602 became effective, should have been judged under the pre-TEFRA standards.[1] However, we reject appellants' contentions and hold that the record in this case clearly demonstrates that the summonses were not issued for solely criminal purposes.
 
 
 9
 Pre-TEFRA law indicated that a Sec. 7602 summons would not be enforced if the taxpayer could prove that the single purpose of the IRS as an institution (the motivation of the individual agent requesting the summons was irrelevant) in issuing the summons was to gather evidence for a criminal prosecution. United States v. Johnson, 652 F.2d 475, 477 (5th Cir.1981). This placed an "extremely heavy burden" upon the taxpayer, because the issuance of a summons was not improper as long as the IRS maintained an ongoing civil investigation and had not yet recommended criminal prosecution to the Justice Department. Id.
 
 
 10
 Here, the evidence in the record is sufficient to indicate that as of the time the summonses were issued the IRS had not abandoned, in an institutional sense, the pursuit of a civil tax determination against the appellants. The summonses were issued at an early stage of the investigation, with the intent of obtaining records which would permit a determination of the appellant's correct civil tax liability. Agent McCammon stated both in an affidavit and upon cross-examination that there has been no recommendation to, or other contact with, the Justice Department regarding the case. Appellants are entitled to no further discovery or hearings on the issue of the "purpose" of the IRS.[2]
 
 B. Abuse of Process
 
 11
 Appellants next contend that it would be an "abuse of process" for the courts to enforce the summonses in the present situation. They argue that in posing undercover and expressly denying that he was an IRS agent, McCammon employed deceptive conduct in order to obtain appellant Jones' cooperation; and that this conduct violated IRS regulations and the Fourth and Fifth Amendment rights of the appellants.
 
 
 12
 1. IRS regulations.
 
 
 13
 The Internal Revenue Manual (IRM) requires that "[a]t the outset of the first official interview with the subject of an investigation" an IRS special agent must identify himself as a special agent and advise the taxpayer of his Fifth Amendment rights. 5 Administration, CCH Internal Revenue Manual p 9384.2(2) (p. 28,216 June 1982). Appellants argue that these requirements weren't complied with during agent McCammon's undercover meeting with Jones.
 
 
 14
 An undercover contact with a taxpayer is obviously not an "official meeting" within the scope of the above provisions of the IRM. Indeed, the IRM itself states that "while acting in an undercover capacity, agents are not required to advise a subject of his/her constitutional rights as contained in IRM 9384.2:(2)(b)." I.R.M. p 9383.2(12) (p. 28,215). Agent McCammon did not violate any IRS regulations or policies.
 
 
 15
 2. Constitutional violations.
 
 
 16
 Appellants' primary argument is that the summonses should not be enforced because their constitutional rights were violated by Agent McCammon's deceptive conduct in affirmatively misrepresenting his identity in order to obtain information during the IRS investigation. Specifically, taxpayers assert that enforcement would violate their Fourth Amendment rights against unreasonable searches and seizures as well as taxpayer Jones' Fifth Amendment right against compelled self-incrimination.
 
 
 17
 Constitutional violations are relevant to the enforcement of an IRS summons, because a suppression hearing in a criminal proceeding that might later result may not adequately protect a taxpayer against unconstitutional action by the IRS. See United States v. Beacon Federal Savings & Loan, 718 F.2d 49, 53-54 (2d Cir.1983). However, we agree with the district court that appellants' contentions are not valid objections to the issuance of third-party summonses in an undercover investigation such as this.
 
 
 18
 Appellants' arguments are based on United States v. Tweel, 550 F.2d 297 (5th Cir.1977). In Tweel, an IRS agent informed a taxpayer that he was conducting an audit of taxpayer's past returns. Taxpayer's accountant asked the agent if an IRS "special agent" was involved in the investigation, to which the agent truthfully answered "no," leading the accountant to believe that the agent was conducting only a civil audit. What the agent did not disclose was that the audit was not routine because it had been specifically requested by the Justice Department's organized crime and racketeering section, which is only involved in criminal investigations. The accountant then voluntarily presented the agent with his own and the taxpayers' records, which the agent microfilmed. The Fifth Circuit held that the agent's microfilming of the records constituted an illegal search in violation of the Fourth Amendment because the taxpayer's consent was obtained through deception. Id. at 298-300.
 
 
 19
 However, the present case arises in the context of an undercover investigation, a situation far different from that presented in Tweel. Tweel stands merely for the proposition that, when acting in their official capacity, IRS agents are expected to deal in an honest and forthright manner and may not abuse the power of their positions by deceiving a taxpayer in order to gain access to that taxpayer's files. See Jones v. Berry, 722 F.2d 443, 447 n. 5 (9th Cir.1983). Tweel is not applicable in an undercover situation, where the agent is not seeking a taxpayer's cooperation based on his status as a government agent. We agree with the analysis in Jones v. Berry, 722 F.2d 443, in which the Ninth Circuit held that a taxpayer's constitutional rights are not implicated when IRS undercover agents elicit incriminating information of income skimming from him by falsely pretending to be interested in buying his business.[3] The court felt that when undercover agents gain the confidence of a suspect who then voluntarily reveals evidence of crimes, that suspect has no expectation of privacy in the information so revealed, and thus there is no search within the meaning of the Fourth Amendment. Id. at 447-48. Likewise there are no Fifth Amendment problems in that situation, since any incriminating statements were voluntarily given and not compelled. See United States v. Hoffa, 385 U.S. 293, 303-04, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966).
 
 
 20
 Moreover, the documents sought in this case are third-party documents not in possession of appellants, over which the appellants enjoy little if any constitutionally protected interest. An Internal Revenue summons directed to a third party bank or accountant does not violate the Fourth Amendment rights of a taxpayer under investigation since the records belong to the summoned party and not the taxpayer: the taxpayer has no privacy interest in the documents. United States v. Security Bank of Nevada, 82-2 U.S.T.C. (CCH) p 9588 (1982) (enforcing third-party summonses issued by the IRS to bank and accountant); see United States v. Miller, 425 U.S., 435, 440-43, 96 S.Ct. 1619, 1622-24, 48 L.Ed.2d 71 (1976) (third party subpoena issued to bank); Couch v. United States, 409 U.S. 322, 336, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973) (IRS third-party summons issued to accountant). Nor does a summons issued to a third-party violate the taxpayer's Fifth Amendment privilege against self-incrimination. That privilege protects the person asserting it only from being compelled to testify against himself; thus a taxpayer cannot assert the privilege if the summons seeks no testimony or information from the taxpayer. "There is no right to be free from incrimination by the records and testimony of others." Security Bank of Nevada, 82-2 U.S.T.C. (CCH) p 9588; see Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) (IRS third-party summons issued to attorney); Couch 409 U.S. at 336, 93 S.Ct. at 619.
 
 
 21
 Appellants come dangerously close to arguing that the use of an undercover agent who affirmatively misrepresents his true identity is unconstitutional per se. This is certainly not the law. In many circumstances, undercover operations are the government's only method of discovering information regarding possible crimes. Many agencies of the government, such as the FBI and DEA, regularly employ undercover methods, in which agents often pose as prospective purchasers of items. United States v. Security Bank of Nevada, 82-2 U.S.T.C. p 9588 (CCH) (1982). Undercover work is a legitimate method of discovering violations of civil as well as criminal law. See, e.g. Northside Realty Associates, Inc. v. United States, 605 F.2d 1348, 1354-55 (5th Cir.1979) (evidence of fair housing violations obtained by testers who posed as prospective home buyers to check for compliance with the law). If any law enforcement agency is to have a meaningful right to conduct undercover operations, undercover agents necessarily must be allowed to deny outright their association with the government. A contrary position would enable individuals suspected of crimes to negate the effects of undercover investigations merely by inquiring of all associates at the outset whether they are government agents.
 
 
 22
 In the end, appellants' arguments boil down to the proposition that it is just not fair for an undercover IRS agent to entice taxpayers into discussing aspects relating to their tax liability without informing them of his identity as an IRS agent. We have rejected similar contentions before, and we reject them here. We are not here to prescribe "fair" rules for the "game" of lawman versus lawbreaker. "The law does not denounce clever or imaginative police work within the bounds of the Constitution even though its result is that a lawbreaker really has no fair chance of escaping prosecution." United States v. Archbold-Newball, 554 F.2d 665, 675 (5th Cir.), cert. denied, 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977). There was no constitutional impropriety in agent McCammon's acquisition of information from appellant Jones, and therefore the district court properly ordered the summonses enforced.
 
 
 23
 C. Fifth Amendment Right Not to Produce Corporate Records
 
 
 24
 Appellant Erwin, the president of Centennial Builders, Inc., raises one last contention; opposing on Fifth Amendment grounds the enforcement of the summons that sought "any and all records reflecting income and receipts of Centennial Builders, Inc." We affirm the district court's rejection of Erwin's contention because an officer may not withhold corporate documents on the basis of his personal right against self-incrimination. The Supreme Court has "time and again allowed subpoenas against the custodian of corporate documents ... over claims that the documents would incriminate the custodian despite the fact that producing the documents tacitly admits their existence and their location in the hands of their possessor." Fisher v. United States, 425 U.S. 391, 411-12, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976); See, Bellis v. United States, 417 U.S. 85, 88-89, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974).
 
 
 25
 The district court's order enforcing the eight IRS summonses issued in this case is
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 We note that the validity of a Sec. 7602 summons is tested as of the date of issuance of the summons. United States v. Garrett, 571 F.2d 1323, 1327 (5th Cir.1978). We express no opinion on the correctness of United States v. Kretz Equipment Co., 83-2 U.S.T.C. (CCH) p 9619 (1983) (holding that amended Sec. 7602 does not apply to a summons issued before the effective date of the amendment)
 
 
 [2]
 It would be especially inappropriate to grant appellants' request in this case because, even if the summons were not enforced due to a "solely criminal purpose," the IRS could assumably reissue identical summonses which would be entirely proper under amended section 7602
 
 
 [3]
 Jones v. Berry, also arose from an IRS undercover operation conducted pursuant to the "Business Opportunity Project." There, IRS undercover agents met with the taxpayer, learned of income skimming within taxpayer's business, and then obtained a warrant and searched taxpayer's home. During the criminal prosecution of the taxpayer, the district court suppressed the evidence acquired through the agents' "false pretenses;" but the Ninth Circuit reversed, finding no expectation of privacy in the information revealed and thus no Fourth Amendment "search." 722 F.2d at 447-48