**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Delores M. WALKER,
Defendant-Appellant.**

No. 84–1412.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 9, 1984.

Decided April 16, 1985.

Thomas E. Brown & Stanley P. Gimbel, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for plaintiff-appellee.

John W. Vaudreuil, Asst. U.S. Atty., Madison, Wis., for defendant-appellant.

Before CUDAHY, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

On October 13, 1983, the United States indicted defendant Delores M. Walker on four criminal tax charges. Defendant thereafter moved to suppress all statements and evidence the Internal Revenue Service obtained in its undercover investigation of her as involuntarily taken in violation of her Fifth Amendment rights. The district court denied defendant's motion. Following the denial of her motion to suppress, defendant and the government reached a plea agreement. Pursuant to that agreement, the government dismissed three counts of the indictment. Defendant pled not guilty to one count of attempt to evade or defeat income tax, 26 U.S.C. § 7201, but stipulated at her trial to the government's evidence, thus preserving for appeal her challenge to the district court's denial of her suppression motion. The court found defendant guilty, sentenced her to eighteen months in the federal penitentiary and fined her $10,500. Defendant now appeals. We affirm.

In March, 1981, IRS Special Agent James Lake received confidential information that defendant was "skimming" profits from her motel and bar business in Ladysmith, Wisconsin. Lake obtained IRS approval to conduct an Individual Information Gathering Assignment ("IIGA"), and then proceeded to conduct the approved undercover investigation of defendant. Because defendant's business was for sale, Lake posed as a representative of a Madison, Wisconsin business investment group. Lake contacted Stanley Kromrey, the realtor listing the property, and arranged to meet defendant.

Lake, Walker and Kromrey met for the first time, in April, 1981, in Walker's living quarters at the motel. At the suppression hearing, Walker testified that at the beginning of this meeting she asked Kromrey

whether Lake was with the IRS, that Kromrey responded "no," and that Lake said nothing. Kromrey's affidavit, attached as an exhibit to the motion to suppress, corroborates defendant's testimony. The government, however, denies that defendant made any such inquiry. Special Agent Lake testified that defendant's and Kromrey's main concern was to ensure that Lake did not represent Walker's ex-husband; he told them he did not. Lake testified that neither Walker nor Kromrey ever directly asked him whether he was with the IRS.

After the meeting, Lake initiated several subsequent telephone calls to defendant. In these conversations, Lake told defendant that the business receipts reflected in Walker's tax returns did not justify the purchase price of the business; Lake asked to see the business' actual records. At a later meeting, Walker reviewed these documents with Lake. It is undisputed that at no point during these conversations did Walker again inquire whether Lake was an IRS agent. Walker did, however, allegedly make several comments to the effect that "the IRS would like to see these records" and she was "glad Lake was not with the IRS."

On June 5, 1981, Lake and several other IRS agents executed a search warrant at Walker's motel and bar. At that time, Lake advised Walker of her constitutional rights.

Defendant argues that, as a general rule of law, the government may not utilize evidence obtained through deceit and trickery. She maintains that Lake's failure to respond to her inquiries as to his IRS affiliation was deceitful and cites *United States v. Tweel*, 550 F.2d 297 (5th Cir.1977), as primary authority for her argument that the Fifth Amendment requires suppression of all statements and evidence obtained in the IRS' undercover investigation of her.

In *Tweel*, an IRS agent informed a taxpayer that he was conducting an audit. The taxpayer's accountant asked whether an IRS "special agent" was also involved. The agent truthfully answered "no," but omitted to inform the accountant that the audit was being conducted at the behest of the Organized Crime and Racketeering Section of the United States Department of Justice. As a result of the agent's omission, the accountant believed the audit was civil and turned certain documents over to the agent, which the agent, in turn, microfilmed. The Fifth Circuit suppressed the documents, holding that the microfilming of the records constituted an illegal search in violation of the Fourth Amendment because the IRS obtained the taxpayer's consent through deception. *Id.* at 299–300.

■ Defendant seeks to extend *Tweel* to the Fifth Amendment context. While there is no doubt that *Tweel* 's deceit and trickery rule logically extends to the Fifth Amendment context, *see United States v. Serlin*, 707 F.2d 953, 956–57 (7th Cir.1983), we note that here the Fifth Amendment is not implicated, in the first instance, because Lake acted in undercover, not official, capacity. *United States v. Centennial Builders, Inc.*, 747 F.2d 678 (11th Cir.1984) is directly on point. There, the IRS conducted an undercover investigation of a retail business. As in the present case, the taxpayer asked the investigator whether he was with the IRS, but the investigator denied any such affiliation. The court held the Fifth Amendment inapplicable and thus rejected the taxpayer's argument that *Tweel* required the suppression of certain evidence. *Id.* at 682–83.

■ Statements obtained in the course of undercover investigations generally do not fall within the traditional protection of the Fifth Amendment, which is implicated only in the context of custodial interrogation.[1] *Miranda v. Arizona*, 384 U.S. 436,

---

**1.** The Supreme Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612. *Miranda* thus presumes the presence of a known government agent; it is the show of authority by a known agent that supplies the initial factual predicate for a finding of "custody."

86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Burton,* 724 F.2d 1283, 1288–89 (7th Cir.1984); *United States v. Mitlo,* 714 F.2d 294 (3d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 550, 78 L.Ed.2d 724 (1983); *United States v. Craig,* 573 F.2d 455 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978). In an undercover operation, the individual cannot be said to be "in custody" because he is unaware that the investigator is a government agent. Hence, any statements obtained in the course of such an investigation are not properly termed compelled testimony under the Fifth Amendment.[2] *See United States v. Centennial Builders,* 747 F.2d at 682–83.

Defendant argues that even if no Fifth Amendment violation exists, we must nonetheless reverse her conviction because the totality of the IRS' conduct violated fundamental norms of decency and justice. She challenges, generally, the constitutionality of covert investigative techniques, but more specifically, she seems to maintain that such tactics are particularly offensive when employed by the IRS.

The Supreme Court upheld the constitutionality of undercover investigations in *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Although the Court did caution that the government's power to initiate and utilize undercover investigations is not without bounds,[3] it explicitly held that neither the Fourth, Fifth nor Sixth Amendment prohibited the government's use of covert tactics. *Id.* at 311, 87 S.Ct. at 418. It is undisputed here that the IRS had reason to investigate defendant; an informant told Lake that defendant was skimming income from her business. Further, Lake obtained specific approval for the IIGA from his supervisor. That defendant allegedly inquired as to Lake's affiliation does not change the result. Any contrary ruling would enable suspected criminals to thwart undercover investigations by merely questioning their associates with respect to their governmental ties. *United States v. Centennial Builders,* 747 F.2d at 683.

Finally, the fact that Lake was an IRS investigator does not provide a basis to subject the investigative techniques used here to greater scrutiny than we would if another enforcement agency were involved. We are aware of no authority that has so differentiated the IRS from other agencies and see no reason to make such a distinction in the present case.[4] However, the conclusion that no constitutional violation occurred in this case should not be equated with this court's approval of the use of all types of undercover tactics by the IRS in connection with its vast enforcement re-

2. The other cases defendant cites in support of *Tweel* are similarly distinguishable. *United States v. Prudden,* 424 F.2d 1021 (5th Cir.), *cert. denied,* 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970). *See also United States v. Serlin,* 707 F.2d 953 (7th Cir.1983).
Again, for the same reason, we summarily dismiss defendant's claim that her statements were involuntary because she made them under economic duress. She states that Lake lured her with promises to purchase her business at a time when she was most vulnerable and cites *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); and *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), in support of her position. Unlike the present case, custodial interrogation clearly occurred in each of those cases. Additionally, each of those defendants was confronted with a Hobson's choice and thus the magnitude of the duress greatly exceeded that which defendant here alleges.

3. The Court explicitly rejected defendant's "general attack upon the use of an informer as a 'shabby thing in any case,'" but stated:
This is not to say that a secret government informer is to the slightest degree more free from all relevant constitutional restrictions than is any other government agent. It *is* to say that the use of secret informers is not *per se* unconstitutional.
*Hoffa v. United States,* 385 U.S. at 311, 87 S.Ct. at 418 (citation omitted). *See also id.* at 315, 87 S.Ct. at 420 (dissent of J. Warren) ("At this late date in the annals of law enforcement, ... we cannot say either that every use of informers and undercover agents is proper or, on the other hand, that no uses are.").

4. Defendant does not argue that the IRS exceeded its authority or acted in violation of that authority.

sponsibilities. In this difficult area of law enforcement, there is always a lingering concern that undercover methods will ultimately prove oppressive, if not destructive of constitutionally-protected liberties.[5]

For the reasons stated, the decision of the district court is

AFFIRMED.

---

**5.** *See Jones v. Berry,* 722 F.2d 443, 446–48 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2343, 80 L.Ed.2d 817 (1984).

