**UNITED STATES of America, Plaintiff,**

v.

**Louis GOLDSTEIN, Defendant.**

No. 85 CR 87.

United States District Court,
N.D. Illinois, E.D.

June 7, 1985.

Sheldon T. Zenner, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Susan G. Feibus, Louis B. Garippo, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Louis Goldstein ("Goldstein") has been charged under 18 U.S.C. § 659 with possession of gold salts and an emerald stolen from a Federal Express facility while in interstate commerce, knowing the items to have been stolen. Goldstein now moves to suppress the emerald, which federal agents seized at his home. For the reasons stated in this memorandum opinion and order, the motion is denied.

### Facts

Goldstein (a Chicago jeweler) bought the emerald from co-defendant and long time acquaintance Louis Cane for $3,500. Later Cane began cooperating with federal law enforcement officials and agreed to help the government retrieve the emerald from Goldstein.

On December 21, 1983 Cane went to Goldstein's store and offered to buy back the emerald on behalf of an undisclosed buyer. Goldstein told Cane he had given the emerald to his wife. When Goldstein then called her on the telephone, she expressed an unwillingness to sell it.

On January 31, 1984 Cane returned to the store and again offered to buy the emerald, this time talking directly with both Goldstein and his wife. Again Mrs. Goldstein said she was unwilling to part with the stone, but Cane offered her $9,500 and asked her to think about it for a few days.

On February 3, 1984 Cane and FBI agent Al Jennerich ("Jennerich") went directly to the Goldsteins' home. Goldstein was at the store, but Mrs. Goldstein was at home. Cane introduced Jennerich to Mrs. Goldstein as the prospective buyer of the emerald and she allowed them to enter the house. Once more she explained her reluctance to sell the emerald, but at Cane's urging she agreed at least to show it to them. When she did so Jennerich identified himself as an FBI agent and seized the emerald.

### Fourth Amendment Standards

Goldstein argues the emerald should be suppressed because Jennerich's deceit in gaining entrance to the home and persuading Mrs. Goldstein to show him the emerald:

1. unreasonably violated Goldstein's expectation that the emerald would remain private in his home; and

2. vitiated Mrs. Goldstein's consent to allow Cane and Jennerich into the home.

Those arguments miss the constitutional mark by a wide margin.

Goldstein's arguments are premised on an incorrect categorization of Jennerich's actions as a consent search of the Goldstein home. Goldstein first invokes *United States v. Dichiarante*, 445 F.2d 126, 129–30 (7th Cir. 1971) for the unimpeachable proposition that consent searches are reasonable only if kept within the bounds of the actual consent. Then he cites numerous decisions suppressing evidence obtained by deceit

when law enforcement officers, acting in their official capacity, obtained consent for limited searches and then searched for and seized items beyond the scope of the consent.

Those cases are inapposite here because Jennerich was acting in an undercover capacity rather than in his official capacity. *Hoffa v. United States,* 385 U.S. 293, 301–02, 87 S.Ct. 408, 413–414, 17 L.Ed.2d 374 (1966) explained the Fourth Amendment is not implicated when a person invites an undercover agent into his or her home and voluntarily divulges incriminating information or evidence. In that circumstance the person relies not on the security interest protected by the Fourth Amendment ("unwarranted governmental intrusion," *id.* at 301, 87 S.Ct. at 413), but rather on his or her "misplaced confidence" the invitee (unknown to be a government agent) will not reveal his or her wrongdoing (*id.* at 302, 87 S.Ct. at 413).

 Looked at in a slightly different way, the cases on which Goldstein relies involve deceit as to the *object* of the entry or search by a person *known* to be a government agent—and to whom consent was given based on that knowledge. But Jennerich's deceit concerned only his *identity* as an agent. Entry of an undercover agent is not illegal if he enters a home for the "very purposes contemplated by the occupant." *United States v. Ressler,* 536 F.2d 208, 211 (7th Cir.1976) (quoting *Lewis v. United States,* 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966) ). If the occupant reveals private information to the visitor under such circumstances, he or she assumes the risk the visitor will reveal it. *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct 1652, 1658, 80 L.Ed.2d 85 (1984).

And that rule is not altered by the fact the visitor is (without the knowledge of the occupant) a government agent. Goldstein cannot possibly argue Jennerich's deceit as to his identity was constitutionally infirm, in light of the approval of comparable undercover operations in *Hoffa* and more recent cases such as *United States v. Walker,* 760 F.2d 144, 147 (7th Cir.1985).

Cane and Jennerich unquestionably gained entrance to the Goldstein home for the purpose understood by Mrs. Goldstein: to discuss the possible purchase of the emerald. She voluntarily showed them the stone as a result of her misplaced trust in them. No Fourth Amendment privacy interest was implicated in those actions.

### Conclusion

This Court rejects Goldstein's effort to suppress the emerald. His motion is denied.