**CHRIS–MARINE USA, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant. (Two Cases.)**

Nos. 93–1626–Civ–J–16, 94–121–Civ–J–16.

United States District Court, M.D. Florida, Jacksonville Division.

March 22, 1995.

Kelly & McCaulie, P.A., Jacksonville, FL, for Chris–Marine USA, Inc.

Larry H. Colleton, U.S. Atty's. Office, M.D.Fla., Orlando, FL, David N. Geier, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

## ORDER

JOHN H. MOORE, II, Chief Judge.

This cause is before the Court on the Report and Recommendation of the United States Magistrate Judge, filed herein on January 20, 1995 (Doc. # 52). Plaintiffs' filed objections thereto on February 2, 1995, and the government filed a memorandum in opposition to the Plaintiffs' objections on February 21, 1995.

After a *de novo* review of the entire record herein, the Court hereby adopts, confirms, and ratifies the Magistrate's Report and Recommendation. Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. That Plaintiff's Petition in Case No. 93–1626–Civ–J–16 to quash the Formal Document Request issued September 17, 1993 is hereby **DENIED** except as to the documents in Exhibit 66 which are already in the possession of the Internal Revenue Service.

2. That Plaintiff's Petition in Case No. 94–121–Civ–J–16 to quash the Formal Document Request issued November 17, 1993 is hereby **DENIED** except as to the documents in Exhibit 66 which are already in the possession of the Internal Revenue Service.

3. That Plaintiff's request to deem the documents admissible in any subsequent civil proceeding is hereby **DENIED.**

4. That Defendants' Motions to Compel compliance with each Formal Document Request are hereby **GRANTED.**

5. That pursuant to § 982(c)(2)(C) and § 982(d)(3) of the Internal Revenue Code, the Plaintiff shall have thirty (30) days from the date herein to comply with the Formal Document Requests and the Motions to Compel.

6. That the *ore tenus* motion for a protective order prohibiting the Internal Revenue Service from furnishing documents to Swe-

Paul I. Perez, Booth & Arnold, Kathleen Holbrook Cold, John R. Stiefel, Jr., Holbrook, Akel, Cold & Stiefel, P.A., Ailish C. O'Connor, Hand, Drew, Showalter, Mercier,

den pursuant to the Treaty is hereby **DENIED**.

7. The clerk is directed to enter final judgment in accordance with this order.

**DONE AND ORDERED.**

*REPORT AND RECOMMENDATION*[1]

STEELE, United States Magistrate Judge.

## I. Status

This cause is before the Court on a Complaint and an Amended Complaint filed pursuant to Title 26, United States Code § 982 seeking to quash two Formal Document Requests served by the Internal Revenue Service (IRS). The parties filed a Stipulation that only the United States was a proper defendant, and this Stipulation was approved by the Court. At a Preliminary Pretrial Conference three cases[2] were consolidated for all purposes and referred to the undersigned for all necessary proceedings and for preparation of a report and recommendation. The United States filed a Motion to Compel Compliance with I.R.S. Formal Document Request in all three cases. An evidentiary hearing was held on August 9, 1994; September 22, 1994; and October 6, 7, 19 and 20, 1994. The parties filed pre-hearing memoranda (Docs. # 22, 30, 37)[3] and have now submitted post-hearing memoranda. (Docs. # 50, 51).

## II. General Legal Principles

▇▇▇▇ The IRS is authorized by 26 U.S.C. § 982(c)(1) to issue a Formal Document Request (FDR) to any taxpayer to request foreign-based documentation.[4] A FDR is "any request (made after the normal request procedures have failed to produce the requested documentation) for the production of foreign-based documentation which is mailed by registered or certified mail to the taxpayer at his last known address and which sets forth" certain information.[5] 26 U.S.C. § 982(c)(1). "Documentation" includes books and records; "foreign-based documentation" is defined as "any documentation which is outside the United States and which may be relevant or material to the tax treatment of the examined item." 26 U.S.C. § 982(d)(1), (2). The FDR supplements the IRS's administrative summons authority and is meant to discourage taxpayers from delaying or refusing to disclose certain foreign-based information to the IRS. *Yujuico v. United States*, 818 F.Supp. 285, 286 (N.D.Cal.1993). Although a FDR is a discovery device, Congress intended that it not be used as a routine beginning of a tax examination. Comm.Rep. on Pub.L. 97–248.

▇▇▇▇ Any person who is mailed a FDR has the right to begin a proceeding to quash the FDR if the proceeding is filed not later than 90 days after the FDR was mailed. 26 U.S.C. § 982(c)(2)(A). If such a proceeding is filed, the Secretary may seek to compel compliance with the FDR in the same proceeding. *Id.*

▇▇▇▇ If the taxpayer fails to substantially comply with the FDR within 90 days of the mailing of the request and fails to bring a proceeding to have the FDR quashed, the statute imposes an exclusionary rule. In any subsequent civil proceeding concerning the

1. Any party may file and serve objections hereto within TEN (10) DAYS after service of this opinion. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

2. A separate Report and Recommendation is being entered in the third case, *Alv B. Christensson v. United States of America*, 94–122–Civ–J–16.

3. All references to document numbers will be to the lowest numbered case, Case No. 93–1626–

Civ–J–16. Similar documents were filed in the other cases.

4. § 982 was added by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97–248, 96 Stat. 629, § 337.

5. The information required to be set forth in a FDR is "(A) the time and place for the production of the documentation, (B) a statement of the reason the documentation previously produced (if any) is not sufficient, (C) a description of the documentation being sought, and (D) the consequences to the taxpayer of the failure to produce the documentation described in subparagraph (C)."

tax treatment of an examined item, the court then having jurisdiction, on motion of the Secretary, shall prohibit the taxpayer from introducing any foreign-based documentation covered by the FDR. 26 U.S.C. § 982(a). An exception to this exclusionary rule will apply if the taxpayer establishes in that subsequent civil proceeding reasonable cause for non-compliance with the FDR. 26 U.S.C. § 982(b)(1). If the taxpayer does file a petition to quash the FDR but does not prevail, the exclusionary rule will apply in any such subsequent civil proceedings if the taxpayer continues to fail to substantially comply with the FDR. 26 U.S.C. § 982(a). If the IRS's motion to compel is granted, this Court may grant the usual remedies to enforce its order.

The procedures concerning a Formal Document Request generally incorporate (but are not identical to) those required to enforce an IRS summons. *Spearbeck v. United States*, 846 F.Supp. 47 (W.D.Wash.1993); *International Marketing Limited v. United States*, 90–2 USTC P 50,-476 (N.D.Cal.1990). The IRS must satisfy the technical statutory requirements of § 982 and establish that: (1) the investigation is being conducted for a legitimate purpose; (2) the inquiry may be relevant to that purpose; (3) the information sought is not already in the possession of the IRS; and (4) the administrative steps required by the Internal Revenue Code have been followed. *United States v. Powell*, 379 U.S. 48, 57–8, 85 S.Ct. 248, 254–5, 13 L.Ed.2d 112 (1964); *United States v. Medlin*, 986 F.2d 463, 466 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 347, 126 L.Ed.2d 311 (1993). This imposes a "minimal burden" upon the IRS, often satisfied by a sworn affidavit. *United States v. Medlin*, 986 F.2d at 466. Once the IRS has made such a showing, the burden shifts to the party contesting the FDR to disprove at least one of the technical statutory requirements or one of the four *Powell* elements, or to convince the Court that enforcement would constitute an abuse of the Court's process. *United States v. Stuart*, 489 U.S. 353, 359–60, 109 S.Ct. 1183, 1187–88, 103 L.Ed.2d 388 (1989); *United States v. Medlin*, 986 F.2d at 466; *La Mura v. United States*, 765 F.2d 974, 979–80 (11th Cir.1985). The burden on the contesting party is a heavy one. *United States v. Leventhal*, 961 F.2d 936, 939 (11th Cir.1992).

## III. Findings of Facts

Plaintiff Chris–Marine USA, Inc. (Chris–Marine USA) is a corporation organized under Florida law with its principal place of business located at 732 Parker Street, Jacksonville, Florida. The business of Chris–Marine USA is to repair large marine diesel engines and sell the equipment to make such repairs. Because of the massive size of the engines, its employees typically go to the vessel to make the engine repairs. Alv B. Christensson is an officer of Chris–Marine USA and owns the building in Jacksonville from which the business is operated.

Karen VanDonsel is a Revenue Agent for the IRS. As a Revenue Agent her job responsibilities include examination of tax returns to determine if they are substantially correct as to tax liability. In November, 1992 Revenue Agent VanDonsel was routinely assigned to examine the 1990 corporate tax return of Chris–Marine USA, Exhibit 2, to determine if it was substantially correct as to its statement of tax liability. Based upon her subsequent investigation this examination was expanded and now includes the corporate tax returns for the years 1990, 1991 and 1992.

### (1) The 1990 Tax Return:

In November, 1992 Revenue Agent VanDonsel obtained and reviewed the 1990 corporate tax return of Chris–Marine USA. She noted the following items pertinent to the present cases: The three listed corporate officers did not own any stock in the corporation; 100% of the company's voting stock was owned by a foreign entity identified as Chris–Marine International Limited, Grand Caymen Island, British West Indies (hereinafter Chris–Marine International), a country which the IRS recognizes as a tax haven; there was an outstanding account payable of $276,458.78 to a Chris–Marine AB, which she believed to be a foreign entity, which had remained the same throughout the calendar year, indicating a possible relationship to Chris–Marine USA; and no Form 5472 was filed with the tax return identifying "reporta-

ble transactions" between Chris–Marine USA and any foreign-owned company, such as Chris–Marine International.

### (2) Initial Review of Chris–Marine USA Documents:

Revenue Agent VanDonsel contacted the IRS International Division because of the apparent international aspects to the taxpayer's business. She contacted Chris–Marine USA for an appointment with Alv Christensson, and was ultimately re-contacted by Chris–Marine USA's outside accountant and power of attorney, Mr. Thomas J. Penneywitt.

On December 1, 1992 Revenue Agent VanDonsel prepared a routine initial Information Document Request (IDR), Exhibit 8, and provided it to Mr. Penneywitt at their meeting that day. At this meeting Mr. Penneywitt told Revenue Agent VanDonsel that: Chris–Marine USA was owned 100% by Chris–Marine International, which was a shell corporation to hold Chris–Marine USA's stock; Alv Christensson owned some stock in Chris–Marine International, but Mr. Penneywitt did not know how much; there were no reportable financial transactions between Chris–Marine USA and Chris–Marine International (which was consistent with the lack of any Form 5472s attached to Chris–Marine USA's 1990 tax return); and he knew of no relationship between Chris–Marine USA and Chris–Marine AB.

Revenue Agent VanDonsel then began a review of the books and records of Chris–Marine USA as provided by Mr. Penneywitt. She determined that the company kept manual records divided into monthly files, and chose the file for January, 1990 as a sample. Revenue Agent VanDonsel determined there was a discrepancy in excess of $70,000 between deposits into the company's bank account and it's accounts receivable. She ultimately determined from the records that Chris–Marine AB had sent a $71,471.80 check to Chris–Marine USA as "commissions"; this check was deposited into Chris–Marine USA's bank account, and a cashier's check in the same amount was then written payable to Chris–Marine International. Exhibits 10, 11, 12, 13. This transaction suggested that a Form 5472 may have been required because payment of commissions from a foreign entity could be a "reportable transaction".

Revenue Agent VanDonsel examined the other available records and determined that there were three other similar transactions for 1990 totalling approximately $230,000. These monetary transactions in and out of Chris–Marine USA were always completed within a calendar month, therefore the account always showed a $0 balance on any financial statement. Mr. Penneywitt stated that no Form 5472s were filed because this money did not belong to Chris–Marine USA but was merely held for short periods for Chris–Marine AB and then forwarded to Chris–Marine International, thereby creating no reportable transactions. This explanation appeared to be contradicted by the company's document references to "commissions" when the checks were sent to Chris–Marine USA.

Revenue Agent VanDonsel's review of the 1991 books and records revealed that there were 5 similar transactions amounting to approximately $300,000 which went through the books of Chris–Marine USA to Chris–Marine International but were not reported.

Revenue Agent VanDonsel continued her routine examination practices focusing on the cost of goods sold component of the 1990 tax return, which for Chris–Marine USA chiefly included travel expenses and contract labor. She found a large number of checks to a foreign company, Scandinavian Diesel. As the examination disclosed areas of concern, Revenue Officer VanDonsel discussed the matters with Mr. Penneywitt.

### (3) Additional Document Requests:

On December 16, 1992 Revenue Officer VanDonsel issued a second Information Document Request, Exhibit 14, to Mr. Penneywitt which included requests for invoices regarding Scandinavian Diesel and travel expense reports. From the three or four boxes of documents produced she found references to other potentially related companies, including Chris–Marine Japan, Chris–Marine Singapore, and Chris–Marine Sydney. The Scandinavian Diesel invoices looked new, as if they had never been sent through the mail. Documents also indicated that Chris–Marine

USA was performing work for a foreign company named Lagoven, S.A. in Venezuela, but that Scandinavian Diesel would bill for work done on that job; initially Scandinavian Diesel received 10% of the payments, but in October, 1990 it started receiving 90%. Mr. Penneywitt explained that Scandinavian Diesel had secured Lagoven as a customer, but initially did not have the employees to do the work, so Chris–Marine USA did the work as a subcontractor and received 90% of the payments. Later Scandinavian Diesel obtained its own employees and did the work, therefore changing the percentage of the payments it retained.

On January 7, 1993 Revenue Agent Van-Donsel issued a third IDR for various documents, including a listing of foreign bank accounts, copies of the cashier's checks from Chris–Marine USA to Chris–Marine International, documentation of the purpose for the transfers, any agreements or letters of understanding between Chris–Marine USA and Chris–Marine International, the general correspondence files, and an appointment with Alv Christensson. Exhibit 15. This documentation was to help determine whether the monetary transactions were "reportable transactions" or non-taxable events. Some, but not all, documents were produced, and no meeting with Alv Christensson was arranged.

On January 15, 1993 a fourth IDR was issued requesting documents concerning Scandinavian Diesel and the change from 10% to 90% retention of the Lagoven payments. Exhibit 17. Examination of the documents produced raised more questions concerning the relationship between Chris–Marine USA and Scandinavian Diesel.

### (4) Meeting with Powers of Attorney:

The accounting firm of Coopers & Lybrand (through Ed Wojeski, Michael Spivey, and Connie Coleman) became involved as additional Powers of Attorney for Chris–Marine USA, focusing on the international aspects of the company. Revenue Agent Van-Donsel asked Mr. Wojeski for a meeting with Alv Christensson, but this was refused; Mr. Wojeski stated he could answer any questions concerning the relationship between the companies.

On January 26, 1993 Revenue Agent Van-Donsel met with Messrs. Penneywitt and Wojeski, who stated: Chris–Marine USA was 100% owned by Chris–Marine International; Alv Christensson owned 100% of Chris–Marine International; the various other Chris–Marine companies (Japan, Sydney, Singapore) were owned by the Christensson family members; Chris–Marine AB was a Swedish entity owned by individuals in the Christensson family, including Alv Christensson, but the accountants declined to name the family members or their percentages of ownership; Chris–Marine International was the marketing arm of the Chris–Marine companies and received commissions from all the related companies (this was not consistent with Chris–Marine USA records, which only showed commissions from Chris–Marine AB); and the money transferred to Chris–Marine USA was money owed by Chris–Marine AB to Chris–Marine International and was paid through Chris–Marine USA because of potential tax ramifications outside the United States.

### (5) The First Formal Document Request:

The meeting on January 26, 1993 failed to resolve some disputed document requests, and Revenue Agent VanDonsel therefore prepared a Formal Document Request on January 27, 1993 and caused it to be sent by certified mail to Chris–Marine USA. Exhibit 16. The purpose of the FDR was to determine the relationships between the various Chris–Marine companies and if and how they impacted the tax liability of Chris–Marine USA. This FDR is not the subject of this litigation.

### (6) Information from Robert Clifton:

On April 27, 1993 Revenue Agent VanDonsel and IRS International Affairs Division specialist Michael Bruton met at the Chris–Marine USA plant in Jacksonville with Robert Clifton, the former secretary-treasurer and current employee of Chris–Marine USA, and Mr. Penneywitt. Mr. Clifton provided the following information: He knew of a marketing agreement between Chris–Marine USA and Chris–Marine International but had never seen it and knew of no Chris–Marine International employees; he did not

know what Chris–Marine International did for Chris–Marine USA; he received the money from Chris–Marine International and transferred it, as instructed by Kent Ekenberg, to Chris–Marine AB to the attention of the same person and at the same address as given him for Scandinavian Diesel in the Grand Cayman Islands; Scandinavian Diesel was a sub-contractor or provided services to Chris–Marine USA. When pressed by the Revenue Agents Mr. Clifton admitted that he prepared the Scandinavian Diesel invoices in Jacksonville after having the forms printed because that company had no one to prepare invoices. He also admitted that most of Scandinavian Diesel 1990–91 employees were Chris–Marine USA employees.

On April 29, 1993 Revenue Agent VanDonsel served a sixth Information Document Request, Exhibit 20, which requested the Scandinavian Diesel invoice backup documentation, the identity of Chris–Marine International employees, and an interview with Alv Christensson. Mr. Penneywitt provided the job files regarding Scandinavian Diesel, but not an interview with Alv Christensson.

On May 10, 1993 Revenue Agents VanDonsel and Bruton met with Messrs. Wojeski and Spivey, who wanted to clear up some possible misunderstandings created by Mr. Clifton's statements. The accountants explained that union problems caused Chris–Marine USA to split a large job into two jobs, and that Alv Christensson caused Scandinavian Diesel to be created in the Cayman Islands. This explanation was not consistent with the documents produced, and the revenue agents and the accountants disagreed as to whether the transactions appeared to be at arms length and whether the expenses appeared to be properly deductible. The accountants did not have the promised list of Scandinavian Diesel employees, saying only that Alv Christensson had the information and he was unavailable. A Summons to Coopers & Lybrand, Exhibit 21, and a second Summons to Chris–Marine USA, Exhibit 22, were delivered to the accountants.

### (7) Information from Kent Ekenberg:

Mr. Ekenberg gave testimony on May 17, 1993 as the vice-president of Chris–Marine USA pursuant to the summons. Mr. Ekenberg stated that Chris–Marine AB manufac-

tured the equipment that Chris–Marine USA sold and used when it repaired diesel engines. Mr. Ekenberg produced a 1982 marketing agreement between Chris–Marine USA and Chris–Marine AB, Exhibit 23, which provided that a commission be paid from Chris–Marine AB to Chris–Marine USA for its marketing activities worldwide. A second marketing agreement, dated 1986, between Chris–Marine USA and Chris–Marine International, Exhibit 24, was also produced. He testified that Chris–Marine USA held money sent by Chris–Marine AB and then forwarded it to Chris–Marine International; he did not know why this was done, although he felt sure there was a good reason. He stated he did not know who owned Scandinavian Diesel, but that it was a company which allowed Chris–Marine USA to do work in Venezuela under a different corporate name.

### (8) Additional Document Production:

In June, 1993 the accountants produced additional records at the Jacksonville plant, including transmittal letters for funds from Chris–Marine AB to Chris–Marine USA which referred to "commission for export deliveries". Exhibit 25. These indicated that Chris–Marine AB was paying commissions to Chris–Marine USA, which was in conflict with the information given the IRS by plaintiff's representatives. The documents indicated the transactions were "reportable transactions" for which Form 5472s were required and which might impact plaintiff's tax liability. Documents were also produced which showed that Chris–Marine USA had authorized: an attorney in the Cayman Islands to pay Scandinavian Diesel employees approximately $260,000, Exhibit 26; payment of Scandinavian Diesel travel expenses, Exhibit 27; and transactions in Scandinavian Diesel's bank account. Exhibit 28. Documents also identified other companies (Chris–Marine de Venezuela, Chris–Marine Norway, and Chris–Marine Japan), and showed some degree of control by Chris–Marine USA. Exhibits 29, 30, 31, 32. While the IRS had been told that Chris–Marine International was performing services and receiving commissions from the Chris–Marine family of companies, no documents indi-

cated it had the capability of carrying out its end of any marketing agreement.

### (9) Filing of Form 5472s:

On July 26, 1993 a completed Form 5472 was hand delivered to IRS reporting $327,000 in commissions paid in 1990 by Chris–Marine USA to Chris–Marine International. Exhibit 34. This form was inconsistent with the treatment of the monies in the 1990 tax return of Chris–Marine USA, and if true would have supported a business deduction of $327,000 which was not reflected on the return. Additional Form 5472s, Exhibits 35 to 43, were also submitted, and these disclosed "reportable transactions" between Chris–Marine USA and Chris–Marine AB, Chris–Marine de Venezuela, Scandinavian Diesel and Alv Christensson and were generally inconsistent with Chris–Marine USA's prior tax returns. On August 23, 1993 Revenue Agent VanDonsel met with the accountants and issued a seventh IDR, Exhibit 53, requesting items not yet received pursuant to the summonses and new documents concerning the relationship between the various Chris–Marine entities and individuals.

### (10) Simultaneous Examination:

A simultaneous examination exists when two countries are conducting separate and independent tax investigations of related subjects. The investigations are not conducted jointly but the countries share information and documents pursuant to an authorizing treaty or convention. The Income Tax Convention between the United States and Sweden, 54 Stat. 1759; T.S. No. 958, became effective on January 1, 1940 and includes provision for mutual assistance and reciprocal exchange of tax-related documents. Documents can only be shared if there are official requests pursuant to the treaty. On June 7, 1993 a revenue agent named Tommy Persson in Malmo, Sweden began an assessment audit of Chris–Marine AB and so informed a representative of that company. Plaintiff's Exhibit 10. From August 31 to September 2, 1993 IRS agents met with Swedish officials in Jacksonville and discussed the type of information which could be exchanged under the treaty and the types of information each country needed for their respective investigations. The simultaneous examination was ultimately approved and some information was provided by the IRS pursuant to these requests.

### (11) September 17, 1993 Formal Document Request:

At a September 7, 1993 meeting the accountants advised the IRS that they now had a clearer understanding of the whole picture, that Chris–Marine USA was one of many marketing arms for the Chris–Marine products, and only Chris–Marine USA received commissions; these statements were inconsistent with prior representations. Chris–Marine de Venezuela was described as a mere collection arm for Chris–Marine USA. It was set up for political reasons in order to have a Venezuelan company receive payment from Lagoven for work done in Venezuela; the money was then forwarded to Chris–Marine USA. Specific additional information was provided but plaintiff failed to produce all requested documents, Exhibit 65.

On September 17, 1993 the IRS issued a Formal Document Request to Chris–Marine USA, Exhibit 55 (a copy of which for convenience is attached as Exhibit 1 to this Report and Recommendation). No one in IRS Criminal Intelligence Division (CID) or outside the IRS was consulted prior to its issuance as to what documents to request; most of these documents had been listed in the May 10, 1993 summons (Exhibit 22) but had not been produced by Chris–Marine USA.

The FDR sought production of three categories of documents: (1) "[a]ll accounting, audit and tax workpapers, original books of entry, and memoranda from January 1, 1990 through December 31, 1991, for Chris–Marine International Limited as it relates to transactions with: [17 entities or individuals [6]]. In addition, all letters, correspon-

---

6. "Chris–Marine USA, Inc., Chris–Marine AB, Chris–Marine Singapore, Chris–Marine Sydney, Chris–Marine Norge, Chris–Marine Hongkong, Chris–Marine de Venezuela, Scandinavian Diesel LTD (a/k/a Scandinavian Diesel Services LTD), Chris–Marine Japan, Alv B. Christensson, Hugo Christensson, Stig Christensson, Christian Christensson, Equipos Nornaval, J. Dennis Hunter (a/k/a Dennis Hunter) Conprodesa or Luis Amario, singly or together."

dence or other documents concerning the above related transactions."; (2) the same documents for the same time period for Scandinavian Diesel Limited (a/k/a Scandinavian Diesel Service Limited); and (3) the same documents for the same time period for Chris–Marine de Venezuela. The examined items for Chris–Marine USA under this FDR were "payments made to, or for the benefit of, Chris–Marine International Limited, Scandinavian Diesel Limited, and Chris–Marine de Venezuela." This Formal Document Request was mailed by certified mail to Chris Marine USA at its last known address at 732 Parker St. Jacksonville, Florida 32202, on September 17, 1993.

### (12) The Criminal Investigation in Sweden:

On or about October 21, 1993 Tommy Persson presented a preliminary report to the local District Attorney's office in Malmo, Sweden recommending criminal tax prosecution. Plaintiff's Exhibit 10. On about the same date Revenue Agent VanDonsel was informed by Tommy Persson that Sweden was conducting a criminal investigation of Chris–Marine AB. Revenue Agent VanDonsel did not participate in this investigation and did not review their initial investigative paperwork or complaint; she did not enter into any agreement with Persson to gather evidence for Sweden's investigation. As the result of Sweden's preliminary report the Swedish District Court appointed Bengt Arnerius to represent Alv Christensson in the possible criminal tax charges in Sweden.

On November 2, 1993 Revenue Agent Van-Donsel learned that Swedish authorities had executed a criminal search warrant on the premises of Chris–Marine AB. On November 2, 1993 IRS Group Manager Roger Maurice had a three way telephone conversation with Chris–Marine USA's representatives in the United States and Chris–Marine AB's representative in Sweden and officially informed them of the simultaneous examination which had been approved.

In mid-to-late October a meeting had been scheduled for November 5, 1993 at the request of Coopers & Lybrand. IRS officials VanDonsel, Bruton, Maurice and Bob Quarles met with plaintiff's representatives Messrs. Spivey and Penneywitt. Also present and directing the meeting was Mr. Connie Coleman, another Coopers & Lybrand accountant from New York, who provided IRS with an appropriate Power of Attorney form. At this November 5 meeting Mr. Coleman stated that a search warrant had been executed at the premises of Chris–Marine AB in Sweden on November 2, 1993, which indicated there was a criminal investigation in Sweden. Mr. Coleman asked whether or not there was a criminal investigation of Chris–Marine USA, and Mr. Maurice responded truthfully "no". Mr. Coleman then asked if there was an intent to refer the matter to CID, and Mr. Maurice responded truthfully "no". None of the IRS officials volunteered that they were aware that a criminal investigation was being conducted in Sweden.

### (13) November 17, 1993 Formal Document Request:

The IRS agents prepared a letter setting forth its position (Exhibit 57) and issued a tenth IDR, Exhibit 56, regarding disputed documents. When the matter was not resolved, the IRS issued the second Formal Document Request to Chris–Marine USA at issue in these cases. (Exhibit 58).

On November 17, 1993 the IRS issued a second Formal Document Request to Chris–Marine USA, Exhibit 58, (a copy of which for convenience is attached as Exhibit 2 to this Report and Recommendation). The examined items for Chris–Marine USA and the documents sought were the same as in the September 17, 1993 Formal Document Request but for calendar year 1992.[7] This Formal Document Request was mailed by certified mail to Chris Marine USA at its last known address at 732 Parker St. Jacksonville, Florida 32202, on November 17, 1993.

### (14) IRS Criminal Investigation:

In mid-December, 1993 Revenue Agent VanDonsel began to prepare the IRS internal form which would refer the matter to the

---

**7.** Four other categories of documents were also sought; plaintiff has agreed to produce these documents, and therefore the Court will not further discuss them. (Doc. # 57, page 6).

Criminal Intelligence Division (CID) of the IRS for a decision as to whether a criminal fraud investigation should be pursued. She was on vacation from December 17, 1993 through January 2, 1994; when she returned she completed the form and recommended a criminal fraud investigation of Chris–Marine USA on January 4, 1994. At no time did Revenue Agent VanDonsel or the IRS contact the United States Attorney's Office or talk with Swedish authorities prior to the referral to CID.

Under the IRS procedures such a referral is made when the revenue agent has a firm indication of fraud. CID reviews the matter and determines whether to accept it as a criminal fraud investigation or have the revenue agent continue the examination under the civil fraud provisions. If the case is accepted by CID, a Special Agent assumes responsibility for the criminal investigation; the revenue agent works jointly with the special agent, and the civil examination is suspended. The IRS continues to maintain an interest in the civil aspects of such an investigation. The Chris–Marine USA examination was accepted by CID as a criminal fraud investigation and Special Agent Robert Snead assumed the lead as of January 10, 1994.

At all times material to these cases the IRS has maintained a valid civil tax determination purpose, although the civil examination has been suspended while the criminal tax investigation is conducted. The IRS has not formed an institutional commitment to a criminal prosecution of Chris–Marine USA, has not recommended criminal prosecution of plaintiff to the Justice Department, and has not deliberately delayed a referral of the matter to the Department of Justice.

The IRS has never acted solely as an information gathering agency of the Swedish government for its investigation of Alv Christensson and/or Chris–Marine AB. The IRS did not deliberately mislead plaintiff's representatives by failing to inform them that Sweden was conducting a criminal investigation of Alv Christensson or Chris–Marine AB.

Documents in the possession of the IRS which may be covered by the two FDRs are listed in Exhibit 66.

## IV. Conclusions of Law

### (1) Technical Statutory Requirements:

■ From the evidence summarized above, the Court finds the United States has established by at least a preponderance of evidence that: (1) the IRS has used its normal request procedures before issuing the two Formal Document Requests challenged in these cases; (2) these normal request procedures failed to produce the requested documentation (with the exception of those documents listed in Exhibit 66); (3) each of the two Formal Document Requests was mailed by certified mail to Chris–Marine USA at its last known address; (4) each of the two Formal Document Requests adequately set forth (a) the time and place for the production of the documents, (b) a statement of the reasons the documentation previously produced was not sufficient, (c) a description of the documentation being sought, and (d) the consequences to Chris–Marine USA of the failure to produce the documentation. Therefore, the United States has established that these statutory requirements for enforcement of the Formal Document Requests have been satisfied.

### (2) Legitimate Purpose of Investigation:

■ The Court finds the United States has established by at least a preponderance of the evidence that the investigation is being conducted, and the two Formal Document Requests were issued, for a legitimate purpose. The IRS was and is conducting an investigation to determine if the 1990, 1991, and 1992 income tax returns of Chris–Marine USA were substantially correct as to their statements of income, expenses, and tax liability. The two Formal Document Requests were issued with the intent to obtain records which would permit the IRS to make these determinations. While there is now an IRS criminal investigation of Chris–Marine USA, the IRS did not issue either of the two Formal Document Requests solely to further the criminal investigation. As discussed below in more detail, the criminal and international ramifications of this civil tax examination do not render its purpose improper.

**(3) Inquiry Relevant to Purpose of Investigation and the Examined Items:**

 Plaintiff argues that Paragraphs 1 through 3 of each FDR relate to transactions wholly between corporations other than Chris–Marine USA, and are therefore not relevant to either its tax liability or the examined items listed on the FDRs. *Powell* requires the requested documents to be relevant to the purpose of the investigation; the statutory definition of "foreign documents" requires the documents to be relevant or material to the tax treatment of the examined items. 26 U.S.C. § 982(d)(1).

 The worldwide income of a United States corporation is subject to taxation under the Internal Revenue Code. 26 U.S.C. § 11. This taxation is made "with regard to" the treaty obligations of the United States, 26 U.S.C. § 894(a)(1), which seek to eliminate double taxation on international transactions. *Johansson v. United States,* 336 F.2d 809, 813 (5th Cir.1964).[8] The Court finds that the United States has established by at least a preponderance of evidence that the documents sought in each Formal Document Request may be relevant to the civil tax investigation to determine whether the 1990, 1991, and 1992 income tax returns of Chris–Marine USA were substantially correct. The Court further finds that the United States has established by at least a preponderance of the evidence that the documents sought in each Formal Document Request are relevant and material to the examined items listed on each FDR.

 The disputed documents sought in both FDRs are reasonably related to the legitimacy of Chris–Marine International as a bona fide entity actually performing services, the validity of the marketing agreements, the potential entitlement to commissions from the Chris–Marine family of companies by Chris–Marine USA for marketing services, and the relationship with Scandinavian Diesel, Chris–Marine International and Chris–Marine de Venezuela. Transactions between related parties may have tax implications. 26 U.S.C. § 482. These documents were relevant to the availability and legitimacy of deductions for tax purposes, the accuracy of Chris–Marine USA's corporate tax returns as to income, and the accuracy of disclosures concerning foreign accounts and transactions. Additionally, the requested documents are relevant to whether there was a parent-subsidiary relationship between Chris–Marine USA and Chris–Marine International, which may affect tax liability of both; whether there are any other companies which have a parent-subsidiary relationship with Chris–Marine USA or Chris–Marine International, which may affect the tax liability of Chris–Marine USA; whether there were any "reportable transactions" involving Chris–Marine USA, which may have required Chris–Marine USA to file a Form 5472 with the IRS and with its corporate tax returns; and to determine whether Chris–Marine de Venezula and Scandinavian Diesel are related companies to Chris–Marine USA since transactions between related companies are frequently subject to abuse and may affect Chris–Marine USA's tax liability.

 The ultimate tax ramifications of the underlying transactions are not controlling as to whether the documents are relevant and material. The IRS is not required to establish prior to the issuance of a summons that Chris–Marine USA may owe taxes or that its income tax returns were not substantially correct. *United States v. McAnlis,* 721 F.2d 334, 336–37 (11th Cir.1983), *cert. denied,* 467 U.S. 1227, 104 S.Ct. 2681, 81 L.Ed.2d 877 (1984). The Court holds that the same rule applies to a Formal Document Request. For this reason the specific provisions of the marketing agreement and the fact that the documents may not "establish or verify" the international marketing activity by Chris–Marine USA do not detract from relevancy and materiality. The evidence presented by the United States clearly established that income tax returns for Chris–Marine USA might not have been substantially correct; issuance of the Formal Document Requests were proper.

8. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

### (4) Documents Not Already in IRS Possession:

With the exception of the items listed in Exhibit 66, the Court finds that the United States has established by at least a preponderance of evidence that the documents sought by the two Formal Document Requests are not already in the possession of the Internal Revenue Service.

### (5) Compliance With Administrative Requirements:

The Court finds that the United States has established by at least a preponderance of evidence that the Internal Revenue Service has fully complied with all administrative steps required by the Internal Revenue Code. Revenue Agent VanDonsel so testified and the testimony was credible.

### (6) Abuse of Court's Process:

■ The primary focus of plaintiff's challenge to the Formal Document Requests is that their enforcement would constitute an abuse of the Court's process. The Court finds that plaintiff has failed to carry its burden as to any of the asserted abuses.

#### (a) Overbreadth:

■ Plaintiff alleges that the Formal Document Requests are overbroad. (Doc. # 31, pages 3–6). The Formal Document Requests cannot be enforced if they do not advise Chris–Marine USA what is required of it with sufficient specificity to permit it to respond adequately. *United States v. Medlin*, 986 F.2d at 467. The Court finds that the requested documentation is not overbroad. The Formal Document Requests adequately specified the three categories of documents requested, the source of those documents (records possessed or controlled by Chris–Marine USA), and the time period (January 1, 1990 to December 31, 1992).

#### (b) Legal Control of Documents:

■ Plaintiff argues that the United States has not shown that it has the legal control over the documents of the foreign entities, and therefore cannot prevail on its motion to compel. (Doc. # 20, pages 15–17). Representatives of plaintiff stated to the IRS that Chris–Marine International was merely a holding company for Chris–Marine USA stock, that Chris–Marine de Venezuela was merely a collection arm of Chris–Marine USA, and that Scandinavian Diesel was created solely to enable Chris–Marine USA to do business in Venezuela. The evidence establishes that Chris–Marine USA has produced some documents which purportedly were the corporate records of these foreign entities. Chris–Marine USA also created many of the documents of Scandinavian Diesel and Chris–Marine International. The government has satisfied its burden for purposes of the motion to compel. If there are further proceedings in this Court due to non-compliance with the order granting the motion to compel, it appears the burden will be on Chris–Marine USA to establish its inability to produce the documents. *United States v. McAnlis*, 721 F.2d 334, 337, 338 (11th Cir.1983), *cert. denied*, 467 U.S. 1227, 104 S.Ct. 2681, 81 L.Ed.2d 877 (1984). The issue of whether non-production can be excused under § 982(b)(1) is not a question for this Court, but rather an issue which may come up, if at all, in a subsequent civil proceeding.

#### (c) IRS Criminal Investigation:

■ Plaintiff argues that the IRS civil tax examination became a criminal tax investigation and asserts the Formal Document Requests therefore cannot be enforced. Plaintiff recognizes that the comparable rule in an IRS summons enforcement case allows enforcement of a summons until a formal referral is made to the Department of Justice.[9] Plaintiff argues, however, that in the Formal Document Request context enforcement is prohibited once there has been a commencement of a criminal investigation, regardless of the lack of a referral to the Department of Justice.

---

9. The same legislation which created the FDR also amended the summons enforcement statute, 26 U.S.C. § 7602, to allow issuance of summons solely to investigate a criminal tax case so long as there had been no formal referral to the Department of Justice. 96 Stat. 329, 622; Public Law 97–248, Sec. 333 (1982). Prior to the amendment the IRS could not use its summons power solely to investigate a criminal tax case. *United States v. Centennial Builders, Inc.*, 747 F.2d 678, 681 (11th Cir.1984).

 The Court will assume the Formal Document Requests are governed by the pre-amendment principles applicable to summons enforcement (i.e., *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) and *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978)). The United States cannot obtain enforcement of the two Formal Document Requests if Chris–Marine USA proves that the *sole* purpose of the IRS as an institution in issuing the Formal Document Requests was to gather evidence for a criminal prosecution. *United States v. Centennial Builders, Inc.,* 747 F.2d 678, 681 (11th Cir. 1984). The mere possibility that the conduct investigated will lead to a criminal prosecution, however, is not sufficient to preclude enforcement of the Formal Document Requests. *Donaldson v. United States,* 400 U.S. 517, 531–32, 91 S.Ct. 534, 542–43, 27 L.Ed.2d 580 (1971). The Formal Document Requests are not improper if the IRS maintained an ongoing civil interest and had not yet recommended criminal prosecution to the Justice Department (or intentionally delayed doing so). *United States v. Centennial Builders, Inc.,* 747 F.2d at 681.

 The enforcement system provided in the Internal Revenue Code is such that the "criminal and civil elements are inherently intertwined." *United States v. LaSalle National Bank,* 437 U.S. at 309, 98 S.Ct. at 2363. Fraudulent conduct carries both civil and criminal penalties, and the involvement of an Intelligence Division Special Agent in an investigation is not determinative or even very significant. *Id.* at 309 n. 12, 98 S.Ct. at 2363 n. 12. As *LaSalle National Bank* stated, "[f]or a fraud investigation to be solely criminal in nature would require an extraordinary departure from the normally inseparable goals of examining whether the basis exists for criminal charges and for the assessment of civil penalties." *Id.* at 314, 98 S.Ct. at 2366. The presence and intent of Special Agent Snead is not dispositive, *Id.* at 315–16, 98 S.Ct. at 2366–67, and does not overturn the institutional posture of the IRS. Chris–Marine USA must prove the non-existence of a valid civil tax determinative purpose by the IRS, which is a heavy burden. *Id.* at 316, 98 S.Ct. at 2367. Additionally, the dates on which the validity of the Formal Document Requests are tested are the dates of issuance. *United States v. Centennial Builders, Inc.,* 747 F.2d at 681 n. 1.

The Court has found that the IRS had not abandoned, in an institutional sense, pursuit of civil tax determinations of Chris–Marine USA as of the dates of the issuance of the Formal Document Requests. The issuance and enforcement of the Formal Document Requests are therefore proper.

### (d) Good Faith Conduct:

 It is clear that the IRS has the affirmative obligation to act in good faith, quite independently of whether its investigation is conducted solely for criminal purposes. *United States v. LaSalle National Bank,* 437 U.S. at 317 n. 19, 98 S.Ct. at 2368 n. 19; *Donaldson v. United States,* 400 U.S. at 536, 91 S.Ct. at 545. Plaintiff argues that the IRS has violated the good faith requirement by (1) acting solely as an information gathering agency of the Swedish government for its investigation of Alv Christensson and Chris–Marine AB, (2) deliberately delaying a referral of the matter to the Department of Justice for criminal prosecution after forming an institutional commitment to such a criminal prosecution, and (3) deliberately misleading its representatives by failing to inform them that Sweden was conducting a criminal investigation of Alv Christensson and Chris–Marine AB and had executed a search warrant in Sweden. The motives and intent of the individual IRS agents are a relevant factor to a good faith inquiry. *LaSalle National Bank,* 437 U.S. at 316 n. 17, 98 S.Ct. at 2367 n. 17. The Court finds, however, that plaintiff has not established that the IRS either acted or failed to act in bad faith.

 Dicta in *United States v. LaSalle National Bank,* 437 U.S. at 317, 98 S.Ct. at 2367–68 stated that "the good faith standard will not permit the IRS to become an information-gathering agency for other departments, including the Department of Justice, regardless of the status of criminal cases." Plaintiff has failed to satisfy its burden of proof that the IRS is acting solely as an information gathering agency for Sweden. There is a "simultaneous examination" with Sweden, and Sweden has obtained numerous documents pursuant to its treaty with the

United States. The documents which the IRS seeks, however, are clearly relevant to its legitimate purpose. The fact that they are also relevant to a Swedish investigation, and properly obtainable under the treaty, does not convert the IRS investigation into an exercise in bad faith. The status of the Swedish investigation of related but distinct entities or individuals has no impact on the propriety of the issuance of the FDRs. *United States v. Stuart,* 489 U.S. at 362–66, 109 S.Ct. at 1189–91. There is no abuse of the Court's process which will occur by enforcing the FDRs.

■ Plaintiff has also failed to establish an institutional commitment to prosecute Chris–Marine USA criminally or a delay in any referral to the Department of Justice. The evidence is uncontradicted that there has been no criminal referral to the Department of Justice, and therefore the bright line test of *LaSalle National Bank* has not been satisfied. The Court will not tolerate delay in submitting a recommendation to the Department of Justice when there is an institutional commitment to make the referral and the IRS merely wishes to gather additional evidence. *United States v. LaSalle National Bank,* 437 U.S. at 316–17, 98 S.Ct. at 2367–68. The Court has found, as stated above, no such institutional commitment or intentional delay.

■ Finally, plaintiff has failed to establish any intentional misrepresentation to its representatives. Plaintiff's reliance on *United States v. Tweel,* 550 F.2d 297 (5th Cir.1977) is misplaced. In *Tweel* the taxpayer's accountant asked if there was an IRS special agent involved in the investigation, and was truthfully told no, which led the accountant to believe the IRS was conducting only a civil audit. The accountant then produced various records to the IRS. What the IRS agent did not volunteer was the fact that the audit had been specifically requested by the Justice Department's organized crime and racketeering section, which was only involved in criminal cases. The *Tweel* court found that the accountant's consent to produce the documents was therefore obtained by deception, and suppressed the documents. *Tweel* does not stand for the proposition that an IRS agent must give a taxpayer or its representative a complete status report of its investigation and all other known investigations, including those of a foreign country, as plaintiff asserts. Rather, *"Tweel* stands merely for the proposition that, when acting in their official capacity, IRS agents are expected to deal in an honest and forthright manner and may not abuse the power of their positions by deceiving a taxpayer in order to gain access to that taxpayer's files." *United States v. Centennial Builders, Inc.,* 747 F.2d at 682. Unlike the accountants in *Tweel,* plaintiff's representatives here had actual knowledge of the Swedish criminal investigation since they knew the criminal search warrant had been issued. There was no legal or ethical obligation to volunteer confirming information concerning the status of the Swedish criminal investigation of individuals and entities separate from the United States taxpayer (Chris–Marine USA). Additionally, there is nothing to suppress, because unlike *Tweel* the taxpayer's representative did not consent to produce the documents and has not done so.

### (e) Protective Order:

■ Plaintiff made an oral motion for a protective order prohibiting the disclosure of documents received pursuant to the FDRs to the Swedish government. It is clear from the evidence that documents provided to Sweden by the IRS were pursuant to the terms of a valid treaty between the two countries. No good cause has been shown to preclude such future conduct.

### V. Recommendations

1. Plaintiff's Petition in Case No. 93–1626–Civ–J–16 to quash the Formal Document Request issued September 17, 1993, Exhibit 55, be **DENIED** except as to those documents in Exhibit 66, which are already in the possession of the Internal Revenue Service;

2. Plaintiff's Petition in Case No. 94–121–Civ–J–16 to quash the Formal Document Request issued November 17, 1993, Exhibit 58, be **DENIED** except as to those documents in Exhibit 66, which are already in the possession of the Internal Revenue Service;

3. Plaintiff's requests to deem the documents admissible in any subsequent civil proceeding be **DENIED;**

4. Defendant's Motions to Compel compliance with each Formal Document Request be **GRANTED;**

5. Plaintiff be allowed thirty (30) days from the date of the Order adopting this Report and Recommendation to comply with the Formal Document Requests and the Motions to Compel;

6. The *ore tenus* motion for a protective order prohibiting the IRS from furnishing documents to Sweden pursuant to the Treaty by **DENIED;** and

7. Judgment be entered accordingly.

DONE AND ENTERED at Jacksonville, Florida, this 20th day of January, 1995.

## ATTACHMENT 1

| Form | Department of the Treasury--Internal Revenue Service | Request |
|------|------|------|
| **4564** | **Information Document Request** | Number |

| To: (Name of Taxpayer and Company Division or Branch) | Subject 11Z0 YE 12/31/90 & 12/31/91 |
|------|------|
| Chris-Marine USA, Inc. | SAIN Number Submitted to: |
| | N/A Tommy Pennywitt/E. J. Woreski |
| | Dates of Previous Requests |
| | N/A |

THIS IS A FORMAL DOCUMENT REQUEST ISSUED IN ACCORDANCE WITH THE PROVISIONS OF INTERNAL REVENUE CODE SECTION 982.

A. Time and Place for the Production of the Documentation.

The books, records and documentation requested herein are to be presented to the Internal Revenue Service at 6800 Southpoint Pkwy, Suite 500, Jacksonville, Florida 32207 on or before December 16, 1993 at 10:00 AM.

B. Statement of the Reason Documentation Previously Produced is not Sufficient.

You have not provided the books and records for Chris-Marine International Limited, Scandinavian Diesel Limited (a/k/a Scandinavian Diesel Services Limited), or Chris-Marine de Venezuela as requested in writing August 23, 1993 and September 7, 1993.

C. Consequences to you for Failure to Produce the Documentation Requested.

A taxpayer who fails to substantially comply with any Formal Document Request as a result of an examination before the 90th day after the mailing date of such Formal Document Request shall be prohibited from introducing any foreign-based document covered by this request into any court having jurisdiction over the civil proceeding dealing with examined items. For Chris-Marine USA, Inc., the examined items in question are payments made to, or for the benefit of, Chris-Marine International Limited, Scandinavian Diesel Limited, and Chris-Marine de Venezuela.

Please refer to 26 H. S. C. 982 for any additional provisions and restrictions arising from a failure to produce the documentation herein requested.

D. Description of the Documentation Being Sought.

All accounting, audit and tax workpapers, original books of entry, and memoranda from January 1, 1990 through December 31, 1991, for Chris-Marine International Limited as it relates to transactions with: Chris-Marine USA, Inc., Chris-Marine AB, Chris-Marine Singapore, Chris-Marine Sydney, Chris-Marine Norge, Chris-Marine Hongkong.

| Name and Title of Requester | Date September 17, 1993 |
|------|------|
| Karen VanDonsel- Revenue Agent | |
| Office Location | |
| 6800 Southpoint Pky Jacksonville, Fla. 32216 | Phone:(904)279-1621 |

| Form | Department of the Treasury--Internal Revenue Service | Request |
|---|---|---|
| **4564** | **Information Document Request** | Number |

| To: (Name of Taxpayer and Company Division or Branch) Chris-Marine USA, Inc. | Subject 1120 YE 12/31/90 & 12/31/91 |
|---|---|
| | SAIN Number: N/A Submitted to: Tommy Pennywitt/E. J. Wojeski |
| | Dates of Previous Requests N/A |

Chris-Marine de Venezuela, Scandinavian Diesel LTD (a/k/a Scandinavian
Diesel Services LTD), Chris-Marine Japan, Alv B. Christensson, Hugo
Christensson, Stig Christensson, Christian Christensson, Equipos
Nornaval, J. Dennis Hunter (a/k/a Dennis Hunter) Conprodesa, or Luis
Amario, singly or together. In addition, all letters, correspondence, or
other documents concerning the above related transactions.

All accounting, audit and tax workpapers, original books of entry, and
memoranda from January 1, 1990 through December 31, 1991, for
Scandinavian Diesel Limited (a/k/a Scandinavian Diesel Service Limited)
as it relates to transactions with: Chris-Marine USA, Inc., Chris-Marine
AB, Chris-Marine Singapore, Chris-Marine Sydney, Chris-Marine Norge,
Chris-Marine Hongkong, Chris-Marine de Venezuela, Chris-Marine
International LTD, Chris-Marine Japan, Alv B. Christensson, Hugo
Christensson, Stig Christensson, Christian Christensson, Equipos
Nornaval, J. Dennis Hunter (a/k/a Dennis Hunter) Conprodesa, or Luis
Amario, singly or together. In addition, all letters, correspondence, or
other documents concerning the above related transactions.

All accounting, audit and tax workpapers, original books of entry, and
memoranda from January 1, 1990 through December 31, 1991, for
Chris-Marine de Venezuela as it relates to transactions with:
Chris-Marine USA, Inc., Chris-Marine Singapore,
Chris-Marine Sydney, Chris-Marine Norge, Chris-Marine Hongkong,
Chris-Marine International LTD, Scandinavian Diesel LTD (a/k/a
Scandinavian Diesel Services LTD), Chris-Marine Japan, Alv B.
Christensson, Hugo Christensson, Stig Christensson, Christian
Christensson, Equipos Nornaval, J. Dennis Hunter (a/k/a Dennis Hunter)
Conprodesa, or Luis Amario, singly or together. In addition, all
letters, correspondence, or other documents concerning the above related
transactions.

| Name and Title of Requester Karen VanDonsel- Revenue Agent | Date September 17, 1993 |
|---|---|
| Office Location 6800 Southpoint Pky Jacksonville, Fla. 32216 | Phone:(904)279-1621 |

Form **4564**

## ATTACHMENT 2

| Form<br>4564 | Department of ...e Treasury--Internal Revenue S‹ .ce<br>Information Document Request | Request<br>Number |
|---|---|---|

| To: (Name of Taxpayer and Company<br>Division or Branch)<br>Chris-Marine USA, Inc. | Subject 1120 YE 12/31/90, 12/31/91, &<br>12/31/92 |
|---|---|
| | SAIN Number Submitted to:<br>N/A Edward J. Wojeski, CPA<br>Dates of Previous Requests<br>N/A |

THIS IS A FORMAL DOCUMENT REQUEST ISSUED IN ACCORDANCE WITH THE PROVISIONS OF INTERNAL REVENUE CODE SECTION 982.

A. <u>Time and Place for the Production of the Documentation.</u>

The books, records and documentation requested herein are to be presented to the Internal Revenue Service at 6800 Southpoint Pkwy. Suite 500, Jacksonville, Florida 32207 on or before February 15, 1994 at 10:00 AM.

B. <u>Statement of the Reason Documentation Previously Produced is not Sufficient.</u>

You have not provided the documents requested in writing on October 1, 1993, except for monthly credit card statements for Mr. Alv B. Christensson. These monthly statements do not reflect the dates the expenses were incurred.

C. <u>Consequences to you for Failure to Produce the Documentation Requested.</u>

A taxpayer who fails to substantially comply with any Formal Document Request as a result of an examination before the 90th day after the mailing date of such Formal Document Request shall be prohibited from introducing any foreign-based document covered by this request into any court having jurisdiction over the civil proceeding dealing with examined items. For Chris-Marine USA, Inc., the examined items in question are payments made to, or for the benefit of, Chris-Marine International Limited, Scandinavian Diesel Limited, and Chris-Marine de Venezuela.

Please refer to 26 H. S. C. 982 for any additional provisions and restrictions arising from a failure to produce the documentation herein requested.

| Name and Title of Requester<br>Karen VanDonsel- Revenue Agent | Date November 17, 1993 |
|---|---|
| Office Location<br>6800 Southpoint Pky Jacksonville, Fla. 32216 | Phone:(904)279-1621 |

Form 4564

| Form 4564 | Department of the Treasury--Internal Revenue Service | Request Number |
|---|---|---|
| | **Information Document Request** | |

| To: (Name of Taxpayer and Company Division or Branch) | Subject 1120 YE 12/31/90, 12/31/91, & 12/31/92 | |
|---|---|---|
| Chris-Marine USA, Inc. | SAIN Number N/A | Submitted to: Edward J. Wojeski, CPA |
| | Dates of Previous Requests | N/A |

**D. Description of the Documentation Being Sought.**

All accounting, audit and tax workpapers, original books of entry, and memoranda from January 1, 1992 through December 31, 1992, for Chris-Marine International Limited as it relates to transactions with: Chris-Marine USA, Inc., Chris-Marine AB, Chris-Marine Singapore, Chris-Marine Sydney, Chris-Marine Norge, Chris-Marine Hongkong, Chris-Marine de Venezuela, Scandinavian Diesel LTD (a/k/a Scandinavian Diesel Services LTD), Chris-Marine Japan, Alv B. Christensson, Hugo Christensson, Stig Christensson, Christian Christensson, Equipos Nornaval, J. Dennis Hunter (a/k/a Dennis Hunter) Conprodesa, or Luis Amario, singly or together. In addition, all letters, correspondence, or other documents concerning the above related transactions.

All accounting, audit and tax workpapers, original books of entry, and memoranda from January 1, 1992 through December 31, 1992, for Scandinavian Diesel Limited (a/k/a Scandinavian Diesel Service Limited) as it relates to transactions with: Chris-Marine USA, Inc., Chris-Marine AB, Chris-Marine Singapore, Chris-Marine Sydney, Chris-Marine Norge, Chris-Marine Hongkong, Chris-Marine de Venezuela, Chris-Marine International LTD, Chris-Marine Japan, Alv B. Christensson, Hugo Christensson, Stig Christensson, Christian Christensson, Equipos Nornaval, J. Dennis Hunter (a/k/a Dennis Hunter) Conprodesa, or Luis Amario, singly or together. In addition, all letters, correspondence, or other documents concerning the above related transactions.

All accounting, audit and tax workpapers, original books of entry, and memoranda from January 1, 1992 through December 31, 1992, for Chris-Marine de Venezuela as it relates to transactions with: Chris-Marine USA, Inc., Chris-Marine AB, Chris-Marine Singapore, Chris-Marine Sydney, Chris-Marine Norge, Chris-Marine Hongkong, Chris-Marine International LTD (a/k/a Scandinavian Diesel Services LTD), Chris-Marine Japan, Alv B. Christensson, Hugo Christensson, Stig Christensson, Christian Christensson, Equipos Nornaval, J. Dennis Hunter (a/k/a Dennis Hunter) Conprodesa, or Luis Amario, singly or together. In addition, all letters, correspondence, or other documents concerning the above related transactions.

| Name and Title of Requester | Date November 17, 1993 |
|---|---|
| Karen VanDonsel- Revenue Agent | |
| Office Location | |
| 6800 Southpoint Pky Jacksonville, Fla. 32216 | Phone:(904)279-1621 |
| Page2 | Form **4564** |

```
Form | Department of the Treasury--Internal Revenue Service |Request
4564 |Information Document Request |Number
 | |
```

| To: (Name of Taxpayer and Company Division or Branch) | Subject 1120 YE 12/31/90, 12/31/91, & 12/31/92 |
|---|---|
| Chris-Marine USA, Inc. | SAIN Number | Submitted to: |
| | N/A | Edward J. Wojeski, CPA |
| | Dates of Previous Requests | N/A |

Contracts, letters, memoranda, or other correspondence which modify, supercede, or nullify the commission contracts between Chris-Marine USA, Inc. and Chris-Marine AB, and between Chris-Marine USA, Inc. and Chris-Marine International LTD.

Contract(s) or other form(s) of agreement between Chris-Marine USA, Inc. and Chris-Marine de Venezuela.

Ownership of Chris-Marine de Venezuela, date it was organized, how it was organized, organization and/or start-up costs, amount of initial and subsequent capital and dates, from whom the capital was received.

For the period January 1, 1990 through December 31, 1992, credit card receipts and/or other expense receipts to support the reduction of the commissions paid from Chris-Marine AB to Chris-Marine USA, Inc. For those expenses relating to travel, please ensure the requirements of IRC 274 are met, to the extent possible.

| Name and Title of Requester | Date November 17, 1993 |
|---|---|
| Karen VanDonsel- Revenue Agent | |
| Office Location | |
| 6800 Southpoint Pky Jacksonville, Fla. 32216 Phone:(904)279-1621 | |

Form 4564