# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KENNETH H. REISERER; REISERER &
AGEE LLP, by Kenneth H.
Reiserer, its successor in interest,
       *Petitioners-Appellants,*

v.

UNITED STATES OF AMERICA,
       *Respondent-Appellee.*

No. 05-35615

D.C. No.
CV-04-00967-JCC

OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Chief District Judge, Presiding

Argued and Submitted
December 6, 2006—Seattle, Washington

Filed March 20, 2007

Before: Betty B. Fletcher and M. Margaret McKeown,
Circuit Judges, and William W Schwarzer,* District Judge.

Opinion by Judge Schwarzer

---

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

**COUNSEL**

John M. Colvin, Chicoine & Hallett, P.S., Seattle, Washington, for the appellants.

Gretchen M. Wolfinger, Tax Division, U.S. Department of Justice, Washington, D.C., for the appellee.

**OPINION**

SCHWARZER, District Judge:

The Estate of Kenneth Reiserer and the law firm Reiserer & Agee LLP (collectively, Reiserer) appeal the denial of their motion to quash an Internal Revenue Service (IRS) summons issued to the Bank of America. The IRS issued the summons in connection with its investigation to determine whether penalties should be imposed on Reiserer pursuant to 26 U.S.C.

§§ 6700 and 6701 for promoting an abusive tax shelter. The district court had jurisdiction pursuant to 26 U.S.C. §§ 7609(b)(2) and 7609(h) and entered a final order denying the petition. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

On appeal, Reiserer contends that the district court erred when it held that: (1) the penalties under those sections survived Kenneth Reiserer's death, and (2) the attorney-client privilege did not protect the material requested from the Bank of America. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Kenneth Reiserer was an attorney whose practice included tax planning services. The IRS alleged that he was involved in an abusive tax arrangement known as offshore employee leasing (OEL). Reiserer was an officer or director of several domestic leasing corporations involved in an OEL scheme. According to the IRS, under an OEL scheme a customer will terminate his current employment and enter into a contract with a foreign leasing corporation. That corporation then leases the rights to the customer's services to a domestic leasing corporation which, in turn, leases the services to the original employer. The original employer pays the domestic corporation, who pays the customer enough to cover living expenses. The foreign corporation receives the remainder of the funds, deducts its fee, and deposits the balance in an offshore account. On May 5, 2003, the IRS published a notice stating that OEL schemes were abusive arrangements and persons involved could be subject to IRS investigation and possible liability. I.R.S. Notice 2003-22, 2003-1 C.B. 851.

In its investigation of Reiserer for potential liability under §§ 6700 and 6701, the IRS found twenty-one customers who participated in his OEL scheme. When Reiserer refused to provide a customer list, the IRS, on April 8, 2004, served a third-party summons on Bank of America. The summons

requested documents from January 1, 1993, to April 7, 2004, relating to accounts maintained by Reiserer's law firm, including his client trust accounts and the accounts of three domestic employee-leasing companies. Reiserer petitioned to quash the summons and the IRS moved to enforce it.

Reiserer passed away on July 12, 2004, but the IRS continued its investigation to determine whether the penalties under §§ 6700 and 6701 could be assessed against his estate. The case was referred to a magistrate judge, who found: (1) the penalties under §§ 6700 and 6701 are not penal in nature and thus do not abate with death, and (2) disclosure of the account information would not violate the attorney-client privilege. The district judge adopted the magistrate judge's report and recommendation and this appeal followed.

## I.

**[1]** Under § 6700, a promoter of an abusive tax shelter "shall pay, with respect to each [proscribed] activity . . . , a penalty" in the amount of the lesser of $1000 or 100% of the gross income derived by that promoter. 26 U.S.C. § 6700(a). Under § 6701, any person who aids, assists or advises in the preparation of a tax return knowing or having reason to believe that use of that advice would result in the understatement of another's tax liability, "shall pay a penalty" of $1000 or, if it relates to the tax liability of a corporation, $10,000. *Id.* § 6701(a) & (b).

**[2]** It is "a well-settled rule that actions upon penal statutes do not survive the death" of a party. *United States v. Oberlin*, 718 F.2d 894, 896 (9th Cir. 1983) (citing *Ex parte Schreiber*, 110 U.S. 76, 80 (1884)). Whether Reiserer's death abates the IRS's action depends on whether the underlying statute is penal or civil in nature. *See United States v. $84,740.00 Currency*, 981 F.2d 1110, 1113 (9th Cir. 1992). Whether §§ 6700 and 6701 are penal or civil is a question of first impression.

In *Hudson v. United States*, 522 U.S. 93 (1997), the Supreme Court held that monetary penalties and occupational debarment sanctions imposed by the Office of the Comptroller of the Currency (OCC) were civil and not criminal (i.e., penal) in nature. Accordingly, the Double Jeopardy Clause did not bar a subsequent criminal prosecution.

**[3]** "Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." *Hudson,* 522 U.S. at 99. Thus, "[a] court must first ask whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " *Id.* (quoting *United States v. Ward*, 448 U.S. 242, 248 (1980)). "Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect, as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* (internal quotation marks, brackets, and citations omitted). To make that determination, the Court "provide[d] useful guideposts" including

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 99-100 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963) (internal quotation marks omitted)). The Court cautioned "that these factors must be considered in relation to the statute on its face, and only the clearest proof

will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100 (quotation marks and citations omitted).

**[4]** Here it is clear that the legislature intended the penalties in question to be civil. The statutes are found in Internal Revenue Code Chapter 68, titled "Additions to the Tax, Additional Amounts, and Assessable Penalties," rather than Chapter 75, titled "Crimes, Other Offenses, and Forfeitures." Further, Chapter 68 penalties can be imposed through administrative authority, unlike Chapter 75 sanctions, which require judicial intervention. *See Hudson,* 522 U.S. at 103 ("That [the] authority [to confer monetary penalties] was conferred upon administrative agencies is prima facie evidence that Congress intended to provide for a civil sanction.").

Turning to the *Hudson* guideposts, we examine the statutes to determine whether there is the "clearest proof" that the statutes are so punitive in purpose or effect as to render them criminal despite the evident legislative intent.

**[5]** The statutes here involve only monetary penalties, and no "affirmative disability or restraint," and "certainly nothing approaching the infamous punishment of imprisonment." *See id.* at 104 (internal quotation marks omitted). Such monetary penalties have not been historically regarded as punishment. *See Helvering v. Mitchell*, 303 U.S. 391, 400 (1938) ("[T]he payment of fixed or variable sums of money [is a] sanction[ ] which [has] been recognized as enforceable by civil proceedings since the original revenue law of 1789."); *Estate of Rau v. Comm'r*, 301 F.2d 51, 56-57 (9th Cir. 1962).

**[6]** The statutes at issue do have a scienter requirement in the sense that the conduct penalized must necessarily be committed knowingly. And while the statutes will serve the traditional aims of retribution and deterrence to some extent, the Supreme Court has recognized "that all civil penalties have some deterrent effect" and that "the mere presence of this pur-

pose is insufficient to render a sanction criminal." *Hudson*, 522 U.S. at 102, 105. The conduct addressed in the statutes may also be the basis for a criminal prosecution, but "[t]his fact is insufficient to render the money penalties . . . criminally punitive." *Id.* at 105. Finally, §§ 6700 and 6701 serve the remedial goal of reimbursing the government for the costs in investigating tax fraud and for possible lost tax revenue, and the penalties are not excessive in relation to the statutes' remedial goal. *See Louis v. Comm'r*, 170 F.3d 1232, 1235 (9th Cir. 1999).

[7] In sum, there is little to show, let alone the "clearest proof," that the penalties are penal.

Our conclusion that the statutes are not penal in nature finds support in two analogous cases. In *Estate of Rau*, we held that a fifty percent addition to tax for fraud did not abate at the taxpayer's death. 301 F.2d at 56-57. While *Rau* predates *Hudson,* its reasoning rests in part on the same precedent as that relied on in *Hudson*. *See id.* at 55 (citing *Helvering*, 303 U.S. 391). And in *Louis*, we held that under *Hudson*, a fifty percent addition to tax for fraud was a civil remedy and did not violate the Double Jeopardy Clause. 170 F.3d at 1235.

Reiserer asserts that the *Hudson* decision determining when a penalty is to be considered criminal for purposes of the Double Jeopardy Clause has no application to the law governing survival or abatement of penalties. He does not explicate reasons for the assertion, and there is no reason in principle to reject the *Hudson* analysis. That analysis is not driven by policies underlying the Double Jeopardy Clause. In *Hudson*, as in the case before us, the fundamental question is what effect to give to a statute as barring a subsequent proceeding. In that context, abatement is analogous to former jeopardy; each is a bar to the continuation of proceedings when those proceedings are grounded on a criminal statute.

Moreover, the *Hudson* analysis is derived from *Ward*, 448 U.S. 242. *See Hudson*, 522 U.S. at 95. And in *$84,740.00 Currency*, we held, on the strength of *Ward*, that the forfeiture under 21 U.S.C. § 881, did not abate on the wrongdoer's death. 981 F.2d at 1113.

Reiserer's reliance on *Ex parte Schreiber* is misplaced. *Schreiber* held that a private action to recover statutory penalties for violation of the copyright law abated on the death of the defendant. 110 U.S. at 80. It reasoned that:

> At common law, actions on penal statutes do not survive, and there is no act of congress which establishes any other rule in respect to actions on the penal statutes of the United States.

*Id.* (internal citation omitted). Thus, *Schreiber* stands for the unremarkable proposition that actions on penal statutes abate; it does not address the issue whether a particular statute is penal or civil in nature.

Finally, Reiserer urges us to reject the *Hudson* analysis in favor of a test adopted by the Sixth Circuit in *Murphy v. Household Finance Corp.*, 560 F.2d 206 (6th Cir. 1977). *Murphy* held that a bankrupt borrower's cause of action for penalties under the Truth in Lending Act was civil in nature. The court's three-factor test looked to whether the statute was to redress individual wrongs, whether recovery runs to the individual, and whether recovery is disproportionate to the harm. *Id.* at 209. Reiserer's argument is not persuasive, first, because it rests on the authority of a court of appeals decision predating *Hudson* by twenty years; second, because it ignores the comprehensive analysis under the guideposts and, in particular, the focus on legislative intent as the dominant factor; and third, because the *Murphy* court's interpretation of the penalty provision of the Truth in Lending Act has little bearing on the interpretation of §§ 6700 and 6701 of the Internal Revenue Code.

## II.

The IRS issued the summons to Bank of America in connection with its investigation of Reiserer for violations of §§ 6700 and 6701, which subject Reiserer but not his clients to potential penalties.[1] Reiserer does not object to the production of records relating to his leasing companies, but contends that client identity and fee information should be protected from disclosure.

[8] It is well settled that there is no privilege between a bank and a depositor. *Harris v. United States*, 413 F.2d 316, 319-20 (9th Cir. 1969) (involving production of all checks deposited into or withdrawn from an attorney's trustee account). In refusing to extend the attorney-client privilege, we stated:

> The reasons which led to the attorney-client privilege, such as the aim of encouraging full disclosure in order to enable proper representation, do not exist in the case of a bank and its depositor. Moreover, the client, by writing the check which the attorney will later cash or deposit at the bank, has set the check afloat on a sea of strangers. The client knows when delivering the check, and the attorney knows when cashing or depositing it, that the check will be viewed by various employees at the bank where it is cashed or deposited, at the clearing house through which it must pass, and at his own bank to which it will eventually return. Thus, the check is not a confi-

---

[1]The summons required Bank of America to provide "[a]ll documents and records in (Reiserer's) possession or under [his] control relating to [Reiserer] or [seven named corporations and Reiserer & Agee]." It called for a wide range of documents relating to accounts in which Reiserer or the named entities had signatory authority, including signature cards, account applications and related documents, cancelled checks for payments exceeding $2999.99, account statements, wire transfer instructions, and documents prepared by the bank.

> dential communication, as is the consultation between attorney and client.

*Id.* at 319-20. As *Harris* explains, there is no confidentiality where a third party such as a bank either receives or generates the documents sought by the IRS. Because the attorney-client privilege applies only where the communication between attorney and client is confidential, there is no privilege protecting the documents the IRS seeks in the present action.

**[9]** To the extent those documents disclose the identity of Reiserer's clients, the attorney-client privilege does not protect that information. "[T]he attorney-client privilege ordinarily protects neither a client's identity nor information regarding the fee arrangements reached with that client." *United States v. Horn* (*In re Horn*), 976 F.2d 1314, 1317 (9th Cir. 1992).

**[10]** Reiserer grounds his privilege claim on *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960). In *Baird*, the attorney had delivered a cashier's check to the IRS in payment of taxes that his unidentified clients had unlawfully failed to pay, an action that in effect acknowledged his clients' guilt. *Id.* at 633. *Baird* stands for the proposition that "the identity of a client is privileged information if revelation of that identity would constitute an acknowledgment of guilt of the offense that led the client to seek legal assistance." *Horn*, 976 F.2d at 1317. Here, the IRS issued the summons as part of an investigation of Reiserer and not of his clients. Disclosure of the clients' identities may eventually lead them to become IRS targets, but disclosure in itself is not incriminating. *See id.* (stating that fee information "may be privileged if it would provide the 'last link' in the chain of evidence incriminating the client" (internal quotation marks and citation omitted)). The records requested will not provide this link and thus the attorney-client privilege does not apply.

**[11]** Finally, Reiserer contends that by seeking financial information of Reiserer & Agee, not limited to the offshore

leasing corporations, the summons seeks information about the firm's entire array of clients. This information, he argues, is not relevant to the purpose of the IRS's investigation. Under 26 U.S.C. § 7602, the IRS has wide latitude to issue a summons for investigatory purposes. *United States v. Jose*, 131 F.3d 1325, 1327 (9th Cir. 1997). It needs only to make a prima facie showing of good faith that the documents it seeks may be relevant to a legitimate purpose, that it does not already possess the information sought, and that it has followed the required administrative steps. *United States v. Powell*, 379 U.S. 48, 57-58 (1964). *David H. Tedder & Assocs., Inc. v. United States*, 77 F.3d 1166 (9th Cir. 1996), is not apposite. There, the IRS requested full access to the firm's bank accounts in the course of an audit of a law firm's tax return. *Id.* at 1168. The district court found that it had failed to show how clients' names were relevant to the audit of the firm because clients could not provide information which would help determine the correctness of the firm's tax return. *Id.* at 1169. Here, in contrast, the IRS maintains that interviewing Reiserer's clients may help the IRS determine the number of illegal schemes marketed by Reiserer, a purpose relevant to a § 6700 investigation. The IRS has shown that it does not already possess the information sought and that it has met the administrative requirements of the Internal Revenue Code. Reiserer has failed to meet the burden of rebutting the government's showing of good faith; the summons is properly enforced. *See Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985) (stating that a taxpayer attempting to rebut IRS's showing of good faith has a heavy burden).

AFFIRMED.