[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10182

_____

D.C. Docket No. 9:16-cv-81735-RLR

MICHAEL PRESLEY,
CYNTHIA PRESLEY,
BMP FAMILY LIMITED PARTNERSHIP,
PRESLEY LAW AND ASSOCIATES, P.A.,

Plaintiffs - Appellants,

versus

UNITED STATES,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 18, 2018)

Before WILSON and ROSENBAUM, Circuit Judges, and TITUS,[*] District Judge.

_____

[*] Honorable Roger W. Titus, United States District Judge for the District of Maryland, sitting by designation.

ROSENBAUM, Circuit Judge:

To say that the 1980 United States Men's Olympic Hockey Team had the odds stacked against it would be an understatement.  With a roster of amateur players whose age averaged 22, the U.S. team had been routed 10-3 by the Soviet team less than two weeks before the Olympics began.[1]  And that was not surprising since the Soviet team was filled with seasoned professionals, had won the past four Olympic gold medals, and had not even lost an Olympic game since 1968.[2]  Beating the Soviet team seemed impossible.  Yet on February 22, 1980, the U.S. team—led by Coach Herb Brooks—did exactly that, scoring a 4-3 "Miracle" win.[3]

---

[1] E.M. Swift, *A Reminder of What We Can Be*, Sports Illustrated, Dec. 22, 1980, https://www.si.com/vault/1980/12/22/106775781/a-reminder-of-what-we-can-be; *Miracle* (Walt Disney 2004).

[2] https://www.hockey-reference.com/olympics/teams/URS (last visited July 10, 2018).

[3] In many ways, Coach Brooks's story mirrored that of the 1980 team.  Cut from the Olympic team in 1960, Brooks steadily rose through the coaching ranks, earning a reputation for fanatical preparation.  Jamie Fitzpatrick*, The Miracle Unfolds*, https://www.thoughtco.com/miracle-on-ice-american-hockey-2778288 (last visited July 9, 2018).  Coach Brooks knew the U.S. team faced overwhelming odds, but he used that fact to motivate the players.  Indeed, the legendary pregame speech attributed to Coach Brooks relied in significant part on the long odds the team faced.  The speech was so unforgettable that years later, for purposes of shooting the film *Miracle*, team member Jack O'Callahan (who faced the additional odds of coming back from a knee injury sustained in the 10-3 pre-Olympics loss to the Soviets) was able to recreate Coach Brooks's speech based on his own memories and those of his teammates.  Bill Littlefield, *Hollywood Scores a 'Miracle' With Locker Room Speech*, WBUR, http://www.wbur.org/onlyagame/2015/06/06/us-miracle-olympics-herb-brooks (last visited July 10, 2018).  In that speech, Coach Brooks is said to have told the team, among other things, "[I]f we played [the Soviets] ten times, they might win nine.  But not this game, not tonight."  *See Miracle* (Walt Disney 2004).

Our history contains many such stories of triumphs over long odds. This, however, is not one of those.

Plaintiffs-Appellants—a lawyer, his law firm, and associated parties—urge creative arguments to avoid their bank's compliance with Internal Revenue Service ("IRS") summonses for their account records. But forget about tough odds the U.S. hockey team faced, Plaintiffs face-off with something even more formidable: the Supreme Court's holdings long ago in *United States v. Miller*, 425 U.S. 435 (1976), and *United States v. Powell*, 379 U.S. 48 (1964). Those cases completely foreclose Plaintiffs' arguments. For this reason, neither Plaintiffs nor their law-firm clients whose interests Plaintiffs attempt to invoke have a viable Fourth Amendment objection to the IRS's collection of Plaintiffs' bank records from Plaintiffs' bank. We therefore affirm the district court's order denying the quashing of the IRS's summonses.

**I.**

In 2016, the IRS sent three summonses to Bank of America, N.A., (the "Bank") in the course of investigating the 2014 federal income-tax liabilities of each of Plaintiffs Michael Presley, Cynthia Presley, BMP Family Limited Partnership, and Presley Law and Associates, P.A. ("Presley Law"). The summonses sought records "pertaining to any and all accounts over which [each Plaintiff] has signature authority," including bank statements, loan proceeds,

deposit slips, records of purchase, sources for all deposited items, and copies of all checks drawn.

As we have suggested, Plaintiff Michael Presley is an attorney, while Presley Law is his law firm. Among the records the IRS sought were the law firm's escrow and trust bank-account records, which were held in the names of Presley Law and BMP.[4] Both accounts contained information about client finances. The IRS notified Plaintiffs of these summonses, but it did not inform Plaintiffs' clients because it was not investigating them.

Plaintiffs moved to quash. They objected only to the Bank's production of records related to their escrow and trust accounts, contending that these records revealed their clients' financial information. The government moved to dismiss, and the district court granted its motion. The district court reasoned that the summonses complied with the governing standard announced in *Powell*, 379 U.S. at 57-58, because the summonses were narrowly drawn and relevant to the IRS's investigation. In addition, the district court concluded that Plaintiffs lacked standing to challenge the summonses as violations of their clients' privacy because their clients lacked a reasonable expectation of privacy in records held by the Bank.

---

[4] Neither the Amended Petition nor any other part of the record sets forth Cynthia Presley's relationship to the escrow and trust accounts summonsed. But one of the summonses sought "all records without limitation, pertaining to any and all accounts over which MICHAEL PRESLEY . . . & CYNTHIA PRESLEY . . . have signature authority . . . ."

Plaintiffs now appeal.

## II.

We will not reverse an order enforcing an IRS summons unless it is "clearly erroneous." *United States v. Morse*, 532 F.3d 1130, 1131 (11th Cir. 2008) (per curiam); *United States v. Medlin*, 986 F.2d 463, 466 (11th Cir. 1993).

Determining whether the district court's order was clearly erroneous requires us to first consider the general framework governing the enforceability of IRS summonses. To ensure compliance with the tax code, Congress designed a system that gives the IRS "broad statutory authority to summon a taxpayer to produce documents or give testimony relevant to determining tax liability." *United States v. Clarke*, 134 S. Ct. 2361, 2364 (2014).

Section 7602 of the Internal Revenue Code is the "centerpiece of that congressional design." *United States v. Arthur Young & Co.*, 465 U.S. 805, 816, (1984). Under § 7602, the IRS may inquire into the correctness of a return by "examin[ing] any books, papers, records, or other data . . . ." 26 U.S.C. § 7602(a)(1) & (2). This summons power is not limited to examining documents of the taxpayer under investigation but also extends to allow the IRS to obtain relevant information from a third party. 26 U.S.C. § 7602(a)(2). But where, as here, the IRS issues a summons to a third-party recordkeeper to gather information

5

about a taxpayer, the IRS must notify the taxpayer of the summons pursuant to 26 U.S.C. § 7609(a).

To guard against potential abuses of this "broad" power, the courts—and not the IRS—are authorized to enforce this summons power. *United States v. Bisceglia*, 420 U.S. 141, 146 (1975) ("Substantial protection is afforded by the provision that an Internal Revenue Service summons can be enforced only by the courts."). In *United States v. Powell*, 379 U.S. 48 (1964), the Supreme Court set forth the analytical framework that governs the courts' enforcement decisions.

First, for the government to establish a prima facie case for enforcement, it must demonstrate that (1) the investigation has a legitimate purpose, (2) the information summoned is relevant to that purpose, (3) the IRS does not already possess the documents sought, and (4) the IRS has followed the procedural steps required by the tax code. *Id.* at 57-58. If the government satisfies *Powell*, the "burden shifts to the taxpayer 'to disprove one of the four *Powell* criteria, or to demonstrate that judicial enforcement should be denied on the ground that it would be an 'abuse of the court's process.''" *United States v. Centennial Builders, Inc.*, 747 F.2d 678, 680 (11th Cir. 1984) (quoting *United States v. Beacon Fed. Sav. & Loan*, 718 F.2d 49, 52 (2d Cir. 1983)). But significantly, a court's review is narrowly circumscribed. A court may inquire as to only whether the "IRS issued a summons in good faith, and must eschew any broader role of oversee[ing] the

[IRS's] determinations to investigate." *Clarke*, 134 S. Ct. at 2367 (alterations in original and internal quotation marks omitted) (quoting *Powell*, 379 U.S. at 56)).

## III.

Plaintiffs do not contend that the IRS failed to comply with *Powell*. Instead, they assert that *Powell* does not apply at all because the Fourth Amendment and the Internal Revenue Code preclude its application in the circumstances of this case. We conduct our analysis of Plaintiffs' arguments in two parts. First, we address whether Plaintiffs have standing to raise their clients' Fourth Amendment claims.[5] Second, we consider the merits of Plaintiffs' claims.

### A. Standing

Plaintiffs argue that they have standing to guard their clients' privacy rights under the Fourth Amendment. The government disagrees. We need not decide this issue.

Privacy is personal. *See, e.g.*, *Rakas v. Illinois*, 439 U.S. 128, 132 (1978); *see also Crosby v. Paulk*, 187 F.3d 1339, 1345 n.10 (11th Cir. 1999) ("[T]he

---

[5] Plaintiffs have Article III standing to raise their clients' objections under the Internal Revenue Code because § 7609(b)(2) grants any person who has received notice of an IRS summons the right to file a petition challenging the summons on any ground. *See United States v. Gottlieb*, 712 F.2d 1363, 1369 (11th Cir. 1983) (ruling against the summoned party by holding that § 7609(f) was inapplicable to unnamed, unsummoned taxpayers and stating that "our holding does not leave unidentified third parties wholly without protection. [The summoned party] . . . can argue that the summons was issued for the purpose of obtaining the third party records and that the audit of the [summoned party] itself was a mere pretext or subterfuge").

Crosbys are precluded from asserting Fourth Amendment rights of third parties who were subject to searches . . . ."); *Lenz v. Winburn*, 51 F.3d 1540, 1549 (11th Cir. 1995) ("[C]ourts have held that a person does not have a reasonable expectation of privacy in another's belongings."). So under most circumstances, Plaintiffs must demonstrate that their own privacy rights are at stake.

Here, Plaintiffs contest only others' privacy rights. As a result, they would ordinarily lack Fourth Amendment standing.

But some debate exists over whether those in situations analogous to Plaintiffs' have standing to assert their clients' interests. That's because Plaintiffs include an attorney and his law firm, and as non-targets of the investigation, Plaintiffs' clients could face obstacles in raising their own privacy objections. *See United States v. Zadeh*, 820 F.3d 746, 755 (5th Cir. 2016) (permitting doctor-plaintiff to raise the privacy objections of his clients); *In re McVane*, 44 F.3d 1127, 1136 (2d Cir. 1995) (permitting summoned party to raise privacy objections of family members).

Recognizing the clients' hurdles in pursuing their own objections, some courts have authorized third-party standing in similar circumstances. In *Reiserer v. United States*, for example, the Ninth Circuit permitted an attorney to raise his clients' privacy objections to an IRS subpoena served on the attorney's bank. 479 F.3d 1160, 1165 (9th Cir. 2007) ("Reiserer does not object to the production of

8

records relating to his leasing companies, but contends that client identity and fee information should be protected from disclosure."). The attorney had sought to represent his clients' interests on the grounds that the subpoena captured his clients' fee information. *Id.*

But we need not resolve whether Plaintiffs here have standing to assert their clients' interests. Plaintiffs' clients' objections rely on the Fourth Amendment. And unlike Article III standing, standing under the Fourth Amendment is not jurisdictional; instead, we analyze it as a merits issue. *See Minnesota v. Carter*, 525 U.S. 83, 87 (1998) ("expressly reject[ing]" treating Fourth Amendment standing like Article III standing); *United States v. Noble*, 762 F.3d 509, 526 (6th Cir. 2014) ("Somewhat confusingly, the Supreme Court refers to this burden as Fourth Amendment standing. This type of standing, however, is not jurisdictional, nor rooted in Article III . . . .").

Because Fourth Amendment standing is not jurisdictional, we need not determine as a separate question whether Plaintiffs have standing under the Fourth Amendment to raise their clients' interests. *See United States v. Gonzalez*, 71 F.3d 819, 827 n.18 (11th Cir. 1996) (determining that the government waived the issue of standing because it "declined to press th[e] standing issue before the district court"); *Noble*, 762 F.3d at 527 (holding that the government may waive its Fourth Amendment standing argument because the "Supreme Court has made clear,

9

Fourth Amendment standing is akin to an element of a claim and does not sound in Article III"); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (rejecting the practice of "assuming" Article III standing for the purpose of deciding the merits, but distinguishing between statutory standing and Article III standing).    Rather, we consider standing as part of the merits when we substantively address Plaintiffs' Fourth Amendment claims.

## B. Merits

In the administrative-summons context, Plaintiffs' objections "must be derived from one of three sources:  a constitutional provision;" the Internal Revenue Code; "or the general standards governing judicial enforcement of administrative subpoenas enunciated in *United States v. Powell* . . . ."  *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741–42 (1984).

Here, Plaintiffs offer arguments under the first two sources.  First, Plaintiffs contend that the Fourth Amendment obligates the government to demonstrate probable cause because their clients had a reasonable expectation of privacy in the records held by the Bank.  Second, Plaintiffs argue that the IRS was obligated to proceed under 26 U.S.C. § 7609(f) by issuing John Doe summonses to their clients and petitioning the district court for an ex parte hearing before obtaining Plaintiffs' bank-account records.

10

We find no merit in these contentions. First, as we explain below, settled precedent requires us to conclude that Plaintiffs' clients lack a reasonable expectation of privacy in financial records held by the Bank, so the Fourth Amendment does not require a showing of probable cause. Second, the Internal Revenue Code does not require an ex parte hearing in the circumstances here. And since Plaintiffs do not dispute that the IRS satisfied the *Powell* factors, that is the end of the matter.

### 1. Plaintiffs' Clients Lack a Reasonable Expectation of Privacy in Financial Records Held By the Bank

Plaintiffs contend that the government must show probable cause to enforce the summonses. And that would be true if Plaintiffs' clients had a reasonable expectation of privacy in the financial records held by the Bank. *See Carpenter v. United States*, 138 S. Ct. 2206, 2221–22 (2018) ("[T]his Court has never held that the Government may subpoena third parties for records in which the suspect has a reasonable expectation of privacy."). But they don't.

Rather, the third-party doctrine precludes that conclusion here. According to that doctrine, a party lacks a reasonable expectation of privacy under the Fourth Amendment in information "revealed to a third party and conveyed by [that third party] to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Miller*, 425 U.S. at 443; *see also*

11

*Centennial Builders*, 747 F.2d at 683 ("An Internal Revenue summons directed to a third party bank or accountant does not violate the Fourth Amendment rights of a taxpayer under investigation since the records belong to the summoned party and not the taxpayer.").

In *Miller*, 425 U.S. at 444, the Supreme Court considered whether a taxpayer enjoys a reasonable expectation of privacy in his bank records. There, while investigating Miller for tax evasion, the IRS subpoenaed his banks, seeking financial documents, including monthly statements. *Miller*, 425 U.S. at 440. Miller objected to the subpoenas, invoking the Fourth Amendment.

The Supreme Court rejected Miller's challenge for two reasons. First, Miller had "neither ownership nor possession" of the documents because they were "business records of the banks." *Id.* Second, the nature of the records the IRS was seeking—checks—further limited Miller's expectations of privacy since the checks were "not confidential communications but negotiable instruments to be used in commercial transactions." *Id.* at 442. The Supreme Court recently reaffirmed the vitality of *Miller*'s holding. *See Carpenter v. United States*, 138 S. Ct. at 2220 (2018) ("We do not disturb the application of . . . *Miller* . . . .").

Both of the Supreme Court's considerations in *Miller* also apply here. As in *Miller*, a third-party bank holds the financial records the IRS seeks, and these records are "not confidential communications" because they are simply registries

12

of financial transactions.  Nor does it matter that Plaintiffs' clients gave their records to Plaintiffs rather than directly to the bank.  Plaintiffs conveyed their records, such as checks for deposit in Presley Law's escrow or trust accounts, knowing that the firm would, in turn, deposit these items with the Bank.  So if Plaintiffs cannot escape *Miller* directly, Plaintiffs' clients cannot avoid its application indirectly.  In short, *Miller* precludes us from holding that Plaintiffs' clients have a reasonable expectation of privacy in the summoned records.

Despite *Miller*'s teachings, Plaintiffs assert their clients have a reasonable expectation of privacy because the Florida Constitution recognizes a privacy right in the circumstances of this case.  But that cannot help Plaintiffs.

State law does not apply here because under the Supremacy Clause, state laws that conflict with federal laws by impeding the "full purposes" of Congress must give way as preempted.  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 899 (2000);  *see also United States v. Fleet*, 498 F.3d 1225, 1227 (11th Cir. 2007); *Matter of Int'l Horizons, Inc.*, 689 F.2d 996, 1003 (11th Cir. 1982) ("It is clear . . . that this is a federal law proceeding and that the Bankruptcy Court is not required to apply the Georgia accountant-client privilege."); *United States v. Moore*, 970 F.2d 48, 50  (5th Cir. 1992) (per curiam) (holding that state-law doctor-patient privilege must yield when it conflicts with IRS's authority under federal summons statute).

13

And there is no question that the Florida constitutional provision granting a privacy interest in bank records would substantially impede the IRS's ability to summon bank records pursuant to the Internal Revenue Code. *See United States v. First Bank*, 737 F.2d 269, 274 (2d Cir. 1984) (holding state-law privacy statute that conflicted with the Internal Revenue Code was preempted); *see also St. Luke's Reg'l Med. Ctr., Inc. v. United States*, 717 F. Supp. 665, 666 (N.D. Iowa 1989) ("[S]tate law may not establish prerequisites to compliance with [an] administrative subpoena issued by a federal agency in accordance with and pursuant to federal statutory law, as such is prohibited [by] article VI, clause 2 of the United States Constitution." (internal quotation marks omitted)).   So the privacy right in Florida's Constitution must yield.[6]

Faced with these problems, Plaintiffs respond with a proposed solution to *Miller*.   Relying upon *Neece v. IRS*, 922 F.2d 573 (10th Cir. 1990), Plaintiffs argue that if their Fourth Amendment challenge does not succeed, "then [the Right to Financial Privacy Act, 12 U.S.C. §§ 3401-3422] would apply."   But Plaintiffs asserted this argument for the very first time only after we held oral argument in this case, when they filed a Rule 28(j), Fed. R. App. P., supplemental authority

---

[6] The way Plaintiffs attempt to use the Florida Constitution here would plainly interfere with the IRS's abilities to execute its summons authority and conduct its investigation.  For that reason, the Court need not conduct a full-on preemption analysis.  For a more thorough discussion of conflict preemption and its several forms, *see Arizona v. United States*, 567 U.S. 387, 398-400 (2012).

contending that the RFPA applies.  That is simply too late.  *See, e.g.*, *United States v. Njau*, 386 F.3d 1039, 1042 (11th Cir. 2004) (per curiam) (refusing to consider argument raised for the first time in a 28(j) letter).

And even if it weren't, the RFPA does not help Plaintiffs.  In response to the broad sweep of *Miller*, Congress enacted the RFPA.  The RFPA prohibits financial institutions from supplying the government with information about their customers' financial records, unless the customer authorizes the disclosure of such information or the government obtains a valid subpoena.  *See* 12 U.S.C. § 3402.

But significantly, the RFPA does not affect the holding in *Miller* as it pertains to an IRS summons.  On the contrary, the statute explicitly provides that "[n]othing in this chapter prohibits the disclosure of financial records in accordance with procedures authorized by Title 26." 12 U.S.C. § 3413(c); *see also Lidas, Inc. v. United States*, 238 F.3d 1076, 1083 (9th Cir. 2001) ("[C]ourts have consistently interpreted RFPA as exempting IRS summonses provided that the IRS followed appropriate Title 26 procedures.").

Nor does *Neece* assist Plaintiffs.  Plaintiffs assert that *Neece* renders the RFPA's exemption of IRS summonses inapplicable in situations like the one here.  There, the Tenth Circuit recognized the RFPA's exemption of IRS summonses.  *See Neece*, 922 F.2d at 575-76 ("The legislative history of [the RFPA] confirms that such records are exempt from the RFPA . . . [a]dministrative summonses

15

issued by the Internal Revenue Service are already subject to privacy safeguards under section 1205 of the Tax Reform Act of 1976." (citation and quotation marks omitted)). And though the court found it inapplicable, it did so only because of the circumstances in that case—circumstances that do not exist here.

In *Neece*, the IRS avoided the usual notice requirements under Title 26 by coaxing the bank into voluntarily disclosing the taxpayer's records. *See id.* at 576 ("Defendants' reading of section 7602(a)(1) would largely negate the taxpayers' protections found in the RFPA by giving a financial institution the unilateral power to abrogate those rights if the financial institution decides to cooperate voluntarily with an IRS investigation of one of its customers."). That, of course, is not the case here.

Plaintiffs have not suggested—and the record does not support the notion— that the IRS neglected to discharge its notice obligations under 26 U.S.C. § 7609(a). Rather, unlike in *Neece*, the IRS here notified Plaintiffs after summoning the Bank for records of Plaintiffs' accounts. And as we explain later in the next section, that is all the law requires. For these reasons, to enforce the summonses at issue here, the IRS was not required to demonstrate probable cause.

16

### 2. Compliance with *Powell* renders the IRS's summonses reasonable, and the IRS was not required to issue John-Doe subpoenas.

Nevertheless, the mere fact that probable cause does not apply does not mean the IRS's authority to issue subpoenas is unbridled. *See United States v. Bailey*, 228 F.3d 341, 349 (4th Cir. 2000) ("The value of constraining governmental power, which Bailey has urged through his misplaced probable cause argument, is nevertheless recognized in the judicial supervision of subpoenas."). In *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946), the Court held that "the basic distinction" between administrative summonses of business records and actual searches of things in which citizens hold a reasonable expectation of privacy means a separate Fourth Amendment standard applies to each circumstance. *Id.* at 204.

For IRS summonses of bank records, the "gist" of the Fourth Amendment protection is that the disclosure sought "shall not be unreasonable." *Id.* at 208. This baseline requirement emanates from the interest of all citizens "to be free from officious intermeddling." *Id.* at 213. But an IRS summons is not unreasonable, provided the IRS "has complied with the *Powell* requirements." *United States v. Reis*, 765 F.2d 1094, 1096 (11th Cir. 1985) (per curiam). In other words, when it comes to the IRS's issuance of a summons, compliance with the *Powell* factors satisfies the Fourth Amendment's reasonableness requirement. *See*

17

*United States v. McAnlis*, 721 F.2d 334, 337 (11th Cir. 1983); *Bailey*, 228 F.3d at 347.

The summonses here satisfy that standard.  In fact, as we have mentioned, Plaintiffs do not contest that the summonses satisfy each *Powell* factor.  For example, Plaintiffs do not suggest that the files containing their clients' records are not relevant to the IRS's investigation and that the summonses are not narrowly tailored.  *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 321 (1985) ("[B]y definition, the IRS is not engaged in a 'fishing expedition' when it seeks information relevant to a legitimate investigation of a particular taxpayer. In such cases, the incidental effect on the privacy rights of unnamed taxpayers is justified by the IRS's interest in enforcing the tax laws.").

Nor do Plaintiffs contend that the summonses were really just a subterfuge so the IRS could investigate their clients or invade the attorney-client privilege.[7] *Cf. id.* at 322 ("[I]f the district court finds in the enforcement proceeding that the IRS does not in fact intend to investigate the summoned party, or that some of the records requested are not relevant to a legitimate investigation of the summoned

---

[7] This latter point bears repeating.  Notably, Plaintiffs do not raise their clients' Sixth Amendment rights.  For that reason, we have no occasion to consider how Plaintiffs' clients' Sixth Amendment rights might affect the analysis, if at all.  The record likewise contains no evidence concerning this issue, and "[t]he identity of a client or matters involving the receipt of fees from a client are not normally within the [attorney-client] privilege." *In re Grand Jury Proceedings (David R. Damore)*, 689 F.2d 1351, 1352 (11th Cir. 1982).  So today we decide only that neither the Fourth Amendment nor § 7609's notice requirements preclude enforcement of the IRS summonses at issue here.

18

party, the IRS could not obtain all the information it sought unless it complied with § 7609(f).").   We are likewise unable to discern any other reason why the summonses should not be enforced.   Because the *Powell* factors define the reasonableness of the summonses under the Fourth Amendment and Plaintiffs do not contest that the summonses satisfy them, our inquiry should be complete.

But Plaintiffs raise yet one more argument—this time under a different section of the Code.   Specifically, Plaintiffs contend that the district court erred by not holding an ex parte hearing pursuant to § 7609(f).   They base their contention on the premise that in *Tiffany*, 469 U.S. 310, the Supreme Court allegedly suggested that the IRS may obtain documents pertaining to unnamed taxpayers in only two ways:   "the summoned party and the unnamed taxpayer must both be under active investigations, or the United States needs to first conduct a full hearing pursuant to section 7609(f)."   Appellants' Reply Br. at 8.   We find three problems with this argument.

First, Plaintiffs make this argument for the first time in their reply brief. That is too late to raise a new issue.   *See Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F.3d 839, 844 (11th Cir. 2008) ("We decline to address an argument advanced by an appellant for the first time in a reply brief."); *United States v. Evans*, 473 F.3d 1115, 1120 (11th Cir. 2006) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.").

19

Second, even if it were not, the text of § 7609(f) does not support Plaintiffs' argument.  Section 7609(f) requires the Secretary to make certain showings concerning so-called John Doe summonses—summonses that "do[] not identify the person with respect to whose liability the summons is issued," 26 U.S.C. § 7609(f)—that is, unnamed persons who are the subject of the IRS investigation in furtherance of which the summons is issued.  But the summonses here identify the subjects of the IRS's investigation as Plaintiffs.  Specifically, they state that they seek records "relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws *concerning the person identified above*" (emphasis added), and the "person[s] identified above" are specified as Michael Presley, Cynthia Presley, Presley Law, and BMP.  Plus, Plaintiffs expressly concede that their clients are not the subject of an IRS investigation.  So the clients are not "person[s] with respect to whose liability the summons is issued," 26 U.S.C. § 7609(f), and § 7609(f) does not apply.

Third and finally, *Tiffany* hurts, not helps, Plaintiffs' case.  In fact, *Tiffany*'s holding requires the conclusion that notice to Plaintiffs affords their clients protection without notifying the unnamed clients specifically.

In *Tiffany*, the IRS issued summonses to a company for its financial statements as well as for a list of the names, addresses, and Social Security

20

numbers of persons who had acquired licenses to distribute Tiffany's products. 469 U.S. at 312. The summonses served dual purposes: to investigate the tax liabilities of Tiffany and to investigate the tax liabilities of its licensees. *Id.* at 313. But because the IRS did not know the identities of the licensees, it provided notice to only Tiffany. *Id.* Tiffany contended that since the IRS sought information about the licensees, the IRS needed to comply with § 7609(f)'s strictures by obtaining court approval through an ex parte hearing. *Id.*

The Supreme Court rejected Tiffany's arguments. The Court held that so long as the IRS followed the proper notice procedures as to one party it was investigating (Tiffany), the IRS was not required to comply with § 7609(f) for the unidentified licensees who were also under investigation but had not received a summons. *Id.* at 324. Under those circumstances, the Supreme Court concluded, "any incidental effect on the privacy rights of unnamed taxpayers is justified by the IRS's interest in enforcing the tax laws." *Id.* at 321. In further explaining this holding, the Court reasoned that notice to one of the parties under investigation would ensure that the "IRS w[ould] not strike out arbitrarily or seek irrelevant materials" because the summoned party "w[ould] have a direct incentive to oppose enforcement . . . ." *Id.*

Plaintiffs seek to draw a distinction between this case and *Tiffany*. They argue that *Tiffany* suggests that if the summoned party—in this case, the Bank—is

21

not under investigation, the IRS must use the § 7609(f) process if the summons happens to sweep in information about somebody other than the taxpayer being investigated. But Plaintiffs miss *Tiffany*'s point. Under *Tiffany*, it matters only that Plaintiffs received notice under § 7609(a) that they were being investigated and were afforded the opportunity to contest the summonses. *See id.* at 317 n.5 ("[A]ll that matters is that the IRS was pursuing a legitimate investigation of Tiffany."). That happened here. And as the Court foresaw in *Tiffany*, Plaintiffs have "argued vigorously—albeit unsuccessfully—against enforcement of the summonses," to no avail. *Id.* at 321. So *Tiffany* cannot help Plaintiffs, either.

## V.

For these reasons, the judgment of the district court is affirmed.

**AFFIRMED.**